## A93A2057. INGRAM v. THE STATE.
### (441 SE2d 74)

McMurray, Presiding Judge.

Defendant was indicted for armed robbery (Count 1), burglary (Count 2) and possession of a knife during the commission of a felony (Count 3). The evidence adduced at a jury trial reveals the following: Defendant entered the victim's home at about 6:30 p.m. on April 24, 1992, placed a knife to the victim's throat and ordered the victim to give him money. The victim complied and defendant fled. The victim immediately summoned law enforcement authorities and, within less than 30 minutes after law enforcement officers arrived on the scene, a young girl informed an investigating officer that a man, matching the description of the victim's assailant, ran into a wooded area near the victim's home. Law enforcement officers quickly enveloped the area of the suspect's escape and flushed defendant out of the woods using dogs trained to detect and track humans. Defendant was then returned to the crime scene where the victim identified defendant as his assailant.

Defendant was found guilty of the crimes charged. This appeal followed. *Held*:

1. Defendant contends the trial court erred in admitting testimony regarding the use of tracking dogs without proof that the dogs were qualified to trace the scent of humans.

" 'Evidence as to the conduct of dogs in following tracks should not be admitted until after a preliminary investigation in which it is established that one or more of the dogs in question were of a stock characterized by acuteness of scent and power of discrimination, and had been trained or tested in the exercise of these qualities in the tracking of human beings, and were in the charge of one accustomed to use them. It must also appear that the dogs so trained and tested were laid on a trail, whether visible or not, concerning which testimony has been admitted, and upon a track which the circumstances indicate to have been made by the accused. . . .' *Fite v. State*, 16 Ga. App. 22 (4) (84 SE 485)." *Johnson v. State*, 165 Ga. App. 146 (2) (299 SE2d 740). However, such a foundation is necessary only when "the evidence of the conduct of the dogs [is admitted] as a circumstance in determining the guilt or innocence of the defendant." *Fite v. State*, 16 Ga. App. 22 (4), 23, supra. In the case sub judice, testimony regarding use of dogs to flush defendant out of a wooded area near the victim's home was not germane to the question of whether defendant committed the crimes charged. This testimony was relevant only to prove the manner in which law enforcement officers apprehended a suspect matching the description of the victim's assailant. Consequently, it was unnecessary to substantiate the specific tracking abilities of the dogs used to flush defendant out of the woods near the victim's home.

2. Defendant next contends the trial court erred in failing to suppress the victim's testimony that he committed the crimes charged, arguing that the on-the-scene showup was inherently suggestive and increased the likelihood that he was misidentified as the perpetrator of the crimes charged.

"Although the practice of showing suspects singly to a witness for identification purposes has been widely condemned, *Daniel v. State*, 150 Ga. App. 798 (1) (258 SE2d 604) (1979), 'our appellate courts have consistently upheld the admission of in-court identifications when prior one-on-one showups are reasonably and fairly conducted at or near the time of the offense. (Cits.)' *Arnold v. State*, 155 Ga. App. 782 (1) (272 SE2d 751) (1980)." *Baines v. State*, 201 Ga. App. 354, 357 (4) (411 SE2d 95). In the case sub judice, defendant was presented to the victim shortly after commission of the crimes charged and the victim then displayed no doubt that defendant was the perpetrator of the crimes charged. Further, the evidence reveals that the victim had ample opportunity to observe his assailant during commission of the crimes charged and that the victim's pre-arrest description of the assailant matched defendant's appearance at the time he was taken into police custody. Under these circumstances, we cannot say that the one-on-one showup was unreasonable or unfair. Further, we do not think the on-the-scene showup of defendant gave rise to a likelihood of misidentification. See *McCounly v. State*, 191 Ga. App. 266, 267 (2) (381 SE2d 552) (1989). Consequently, the trial court did not err in allowing the victim's testimony that defendant was the perpetrator of the crimes charged.

3. In his third enumeration, defendant contends the trial court erred in allowing evidence of a knife that defendant was carrying at the time of arrest.

"Georgia's case law is replete with holdings that articles which are similar to ones used in a crime but are not identical are nevertheless admissible. See, e.g., *Duvall v. State*, 238 Ga. 325 (232 SE2d 918); *Jung v. State*, 237 Ga. 73 (226 SE2d 599); *Davis v. State*, 230 Ga. 902 (199 SE2d 779); *Kent v. State*, 157 Ga. App. 209 (276 SE2d 881); *Gunn v. State*, 245 Ga. 359 (264 SE2d 862); Moore v. Illinois, 408 U. S. 786 (92 SC 2562, 33 LE2d 706)." *Paxton v. State*, 160 Ga. App. 19, 22 (6), 23 (285 SE2d 741). In the case sub judice, the victim testified that the knife taken from defendant at the time of arrest was similar to the knife used by the perpetrator of the crimes charged. This testimony formed sufficient foundation for admitting the knife into evidence.

4. Defendant contends the trial court erred in allowing evidence of an inventory of items seized from him at the time of arrest because the State failed to give him a copy of said inventory as required by OCGA § 17-5-2. This contention is without merit. Failure to provide

defendant with an inventory as required by OCGA § 17-5-2 provides no basis for suppressing the inventory at trial. *Carson v. State*, 241 Ga. 622, 623 (1) (247 SE2d 68).

5. In his final enumeration, defendant contends the trial court erred in failing to give his written request to charge the language of OCGA § 17-5-2 regarding his right to an inventory of property seized from him at the time of arrest.

"It is an old and sound rule that error to be reversible must be harmful. *Dill v. State*, 222 Ga. 793 (1) (152 SE2d 741); *Burger Chef Systems v. Newton*, 126 Ga. App. 636, 639 (191 SE2d 479). Thus when a [party] brings a case here, he must show error which has hurt him. This court is not an expounder of theoretical law but it administers practical law, and corrects only such errors as have practically wronged the complaining party." *Best Concrete Prod. Co. v. Medusa Corp.*, 157 Ga. App. 97, 101 (5) (276 SE2d 147) (1981). In the case sub judice, defendant has not suggested how he was harmed by the trial court's failure to give his written request to charge the language of OCGA § 17-5-2 and we are unable to perceive how this omission could have been harmful to defendant. Any failure in providing defendant with an inventory of items taken at the time of arrest provides no basis for reversal. See *Carson v. State*, 241 Ga. 622, 623 (1), supra. This enumeration establishes no ground for reversal.

*Judgment affirmed. Johnson and Blackburn, JJ., concur.*

DECIDED JANUARY 25, 1994 —
RECONSIDERATION DENIED FEBRUARY 4, 1994 —

*Frank Gonzalez*, for appellant.
*H. Donnie Dixon, Jr., District Attorney, George E. Barnhill, Assistant District Attorney*, for appellee.