## A10A2246. AQUINO v. THE STATE.
(706 SE2d 746)

ADAMS, Judge.

Juan Aquino was tried and convicted of trafficking in methamphetamine. On appeal, he contends the evidence was insufficient to support the conviction and that first appellate counsel was ineffective.

1. To establish the offense of trafficking in methamphetamine as charged in this case, the State was required to prove that Aquino did unlawfully knowingly possess 400 grams or more of a mixture containing methamphetamine. OCGA § 16-13-31 (e) (3). The standard for reviewing the sufficiency of the evidence is whether the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Construed in favor of the verdict, the evidence shows that the drug task force for the Gwinnett County Police Department was using a confidential informant to assist with an investigation into the sale of large amounts of methamphetamine. The investigation led to a house located at 2615 Cardinal Lake Circle in Gwinnett County; the property backs up to a lake. On March 22, 2005, the police observed Lionel Minera Aleman, Joaquin Pineda, and Ernesto Maldonado Vasquez get out of two cars, a Cadillac and a Toyota, at that location. One or more other unidentified men were there as well, who, an officer admitted, could have gone into the house that evening and could have been the people who brought the drugs there. The informant then went to the house, spoke with the men for a few minutes in the driveway, and left. He thereafter met with the investigators to relate what had happened. The confidential informant did not testify.

Co-indictee Aleman testified that on the next night, Wednesday, March 23, after dark, he, Pineda, and Marcelino Mata Sanchez arrived at the house in the Cadillac, with Sanchez driving. Afterward, an unidentified man arrived in a pickup truck. Sanchez went to the door, and the appellant, Aquino, opened the door holding a black bag. Sanchez and Pineda went into the house; Aleman never did, and he claimed to be ignorant of what transpired in the house.[1]

Some indefinite amount of time later that night, under police instruction, the informant returned to the house wearing a con-

---

[1] At one point, Aleman suggested that the man who arrived in the pickup truck was Aquino, but, of that person, he testified, "I don't know if this man accordingly was going there to get drugs or what."

cealed transmitter, but the transmissions were not recorded. The Cadillac was at the house when the informant arrived. Once the informant was inside the house, Officer Lester heard one or more unidentified voices from the informant's transmitter and heard the informant count out what was asserted to be seven pounds of methamphetamine. In a phone call, Lester told the informant to explain that his boss was expecting fifteen pounds, not seven, and that they should contact him when they had it; the officer instructed the informant to leave. After the informant left, he and Lester headed for Lester's office to meet. About ten minutes after Lester left the scene, he heard over the radio that the Cadillac was leaving the premises. As a result, an order was issued to other officers to stop the car and secure the residence; Aleman, Pineda, and Sanchez were found in the Cadillac. Vasquez was stopped in the area in the Toyota.

When Investigator Doherty approached the house, he found Aquino standing in the driveway about 20 feet from the front door not far from a Corvette parked in the driveway at the garage end of the house. Doherty ordered Aquino to the ground, where he was detained. Doherty then opened the unlocked front door, entered, and, with other officers, secured the premises, which, he explained, means "go and kind of flood the house, just secure all rooms for any persons or anything that was in danger." No one was in the house at that time. The officers then waited until a search warrant was obtained.

After obtaining the warrant, officers found a large, black trash bag in a drawer, either in the kitchen or in the living room, that contained what proved to be seven bags of white crystal methamphetamine weighing 443.77 grams. In the basement, where there was a noticeable odor of acetone — a material used in the manufacture of a crystal form of methamphetamine — officers found several items commonly used to manufacture and package methamphetamine. Some similar items were found under a counter in a bathroom. They found Aquino's Georgia driver's license in a bedroom on the main floor, although the address shown was for a different house located somewhat nearby. The officers also found identification for three other men, two of whom were never identified as one of the arrestees. When an officer was asked who the men identified on these documents were, an officer testified, "I can't recall if they were there that evening or not."

On Aquino's person, officers found a key ring with several keys, one of which fit the front door and the kitchen door, and one of which fit the Corvette parked in the driveway; he was not carrying a Georgia driver's license or any other Georgia identification. A Georgia license tag registered to the Corvette but in another person's name — Tomas Velazquez — was found in the basement. The Corvette had a tag marked "tag applied for." None of the other men

arrested that night had keys to the house.

The landlord testified that the proper tenants had disappeared and that a subtenant had taken over. Because the March rent went unpaid, she entered the house on March 5 with her own key. She saw a stack of pots in the basement at that time, which she thought was unusual. On March 19, the Saturday before the March 23 raid, she had contact with a man named Eddie Hernandez, who paid some of the rent. After the arrests, she noticed that the locks had been changed on two doors without her knowledge; she was able to enter through the basement door whose lock had not been changed. Also, after the arrests, a passport for Eddie Hernandez was found in the house; there were other documents in his name, as well as documents in other names. There is no indication that a person named Eddie Hernandez was indicted.

The five men found at the location or in the two cars were arrested and charged. The officers did not take fingerprints from anything in the house. Aquino was tried first and separately from the other men.

Aquino contends the State failed to prove that he knowingly possessed the illegal drugs because the officers never saw him in the house nor entering or exiting the house during their investigation; they never saw him drive or get in or out of the Corvette; they first saw him when he was standing in the driveway; he was not the owner or lessee of the house; no contraband was found on his person; and the evidence did not link him with drugs found hidden in the bag in the cabinet nor with the drug manufacturing equipment found in the basement.

A conviction for possession can be based on constructive possession under certain conditions:

> A person may be found to have had constructive possession of contraband if it is shown that he had "both the power and the intention at a given time to exercise dominion or control over (it)." [Cit.] "(A) finding of constructive possession must be based upon some connection between the defendant and the contraband other than mere spatial proximity." [Cit.]

*Thurmond v. State*, 304 Ga. App. 587, 591 (2) (696 SE2d 516) (2010). "A finding of constructive possession of contraband cannot rest upon mere spatial proximity to the contraband, especially where . . . the contraband is hidden." *Mitchell v. State*, 268 Ga. 592, 593 (492 SE2d 204) (1997).

Here, there was evidence that the locks on the house had been changed sometime in the preceding three weeks without the land-

lord's knowledge; Aquino was the only person arrested that day who had a key to the house; he was seen opening the door of the house earlier the same evening on the day of his arrest holding a black bag that could have been the bag that held the drugs; his driver's license was found in a bedroom; and he was in possession of a key to the car parked on the premises whose license tag was found in the basement. But all of this evidence is circumstantial with regard to Aquino's constructive possession of the contraband.

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused," OCGA § 24-4-6, although "it is not necessary that such evidence be devoid of every inference or hypothesis except that of the defendant's guilt." *Peppers v. State*, 261 Ga. 338, 339 (1) (404 SE2d 788) (1991). "Whether the circumstantial evidence is sufficient to exclude every reasonable hypothesis save that of defendant's guilt is a question for the jury unless the verdict is insupportable as a matter of law." *Martin v. State*, 201 Ga. App. 716, 718 (1) (b) (411 SE2d 910) (1991).

In *Ridgeway v. State*, 187 Ga. App. 381 (370 SE2d 216) (1988), the defendant was found standing in a living room in possession of keys to the apartment with small amounts of cocaine nearby, for which he was convicted of possession. Even so, his conviction of trafficking and possession with intent to distribute larger quantities of drugs found in other rooms in the apartment (along with measuring spoons, empty glassine bags, and scales) was reversed because the evidence did not show that he resided there or that he was engaged in a conspiracy with his co-indictees, who were also found in the house, regarding those drugs. "While the evidence creates the gravest suspicion that defendant may be guilty of the offense of which he was convicted . . . , suspicion is not sufficient to support a conviction." Id. at 383. The State had not eliminated other reasonable hypotheses, including that Ridgeway may have been a customer of the drug operation. See also *Johnson v. State*, 245 Ga. App. 583 (538 SE2d 481) (2000) ("a mere occupant, as distinguished from a resident, does not necessarily have the requisite control over the premises to authorize the inference that he possesses all property found thereon"). See, e.g., *Paden v. State*, 216 Ga. App. 188 (453 SE2d 788) (1995) (evidence did not link defendant to drugs found on dresser in same room where he was discovered and where others also had access).

Similarly, here, despite the keys to the house and the car, the changed locks, the license and the tags, or even his appearance in the open front door holding a black bag, there is nothing in this case linking Aquino to the drugs or manufacturing equipment in the

house. There is no evidence that Aquino was holding the bag in which the drugs were found, nor testimony that there were no other similar bags on the premises. He was never seen in proximity to the drugs or drug-making equipment. The drugs were located in a drawer and not visible to the officers when they initially entered the home. No drugs were found on Aquino's person. He was neither the owner, lessee, nor an occupant of the house; in fact, papers were found in the house in several other peoples' names, including several who were not indicted. Although Aquino had keys to the house and to the Corvette, he could have borrowed the keys temporarily or been asked to hold them and watch over the house. It was never shown that the key ring held other keys that fit Aquino's own home or his own car. Although his license was found in a bedroom, no clothing was found there nor any other indication that he occupied or lived in the house, nor any other incriminating evidence; in fact, his license showed a different address located nearby. Finally, there is no testimony that the odor of acetone detected in the basement was present on the first floor, the only place where Aquino was seen.

"Presence at the scene of a crime is not sufficient to show that a defendant is a party to the crime under OCGA § 16-2-20. Even approval of the act, not amounting to encouragement, will not suffice." (Citations and punctuation omitted.) *Ridgeway*, 187 Ga. App. at 382. Moreover,

> where the evidence on the possession of contraband is entirely circumstantial, it is usually sufficient to convict where the proof shows the premises to be occupied by and under the control of the accused, but if the proof also shows that others than the accused have equal right of access and occupancy it is usually insufficient.

(Citation and punctuation omitted.) *Paden*, 216 Ga. App. at 190 (1). There was evidence that Sanchez and Pineda were in the house on the night of the arrest; documents such as licenses, checks, and real estate documents for several other people were located in the house; a man named Eddie Hernandez paid part of the rent four days earlier, yet he was not indicted and neither his whereabouts nor his role was explained at trial; and an officer admitted that there were other unidentified people at the house on the night before the raid who could have been responsible for the drugs. Thus, several other people with access to the house are unaccounted for and were not charged.

Like in *Ridgeway*, "[the] evidence combined with the presence of a key to the [premises] on the person of defendant raise grave suspicions of defendant's guilt." *Ridgeway*, 187 Ga. App. at 382.

Nevertheless, the State has failed to establish that Aquino had both the power and the intention at the time of his arrest to exercise dominion or control over the drugs and failed to show that other men did not have equal access to the house and the items within it.

2. Aquino's contention that his trial counsel was ineffective is moot.

*Judgment reversed. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 2, 2011.

*Walter M. Chapman, Martin M. Del Mazo*, for appellant.
*Daniel J. Porter, District Attorney, James M. McDaniel, Assistant District Attorney*, for appellee.