**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

July 11, 2012

# In the Court of Appeals of Georgia

A12A0662. GARCIA v. THE STATE

MIKELL, Presiding Judge.

Alfonso Cobarrubias-Garcia (appellant) was convicted by a jury of trafficking in cocaine,[1] trafficking in methamphetamine,[2] and possession of a firearm during the commission of a felony.[3] He was acquitted of misdemeanor possession of marijuana.

---

[1] OCGA § 16-13-31 (a) (1) ("Any person . . . who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine . . . in violation of this article commits the felony offense of trafficking in cocaine").

[2] OCGA § 16-13-31 (e) ("Any person who knowingly . . . has possession of 28 grams or more of methamphetamine . . . or any mixture containing . . . methamphetamine . . . in violation of this article commits the felony offense of trafficking in methamphetamine").

[3] OCGA § 16-11-106 (a) (5) ("Any person who shall have on or within arm's reach of his or her person a firearm . . . during the commission of, or the attempt to commit . . . [a]ny crime involving the trafficking of cocaine . . . or illegal drugs as provided in Code Section 16-13-31, and which crime is a felony, commits a felony").

He appeals the denial of his amended motion for new trial, challenging the sufficiency of the evidence. Because the state failed to prove any connection between appellant and the contraband other than spatial proximity, we reverse.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[4]

The standard of review in evaluating the sufficiency of the evidence is "whether the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense."[5]

So viewed, the evidence shows that FBI narcotics agents, investigating a suspected shipment of cocaine from Mexico to Atlanta, were led to a house located at 3070 Dowry Drive in Gwinnett County. On April 30, 2008, at 10:30 p.m., the agents conducted a "knock and talk" at the house, hoping to gather information from the occupants and to obtain permission to conduct a search. The agents knocked on

---

[4] (Citation and punctuation omitted.) *Clyde v. State*, 298 Ga. App. 283 (680 SE2d 146) (2009).

[5] *Aquino v. State*, 308 Ga. App. 163 (1) (706 SE2d 746) (2011), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

the door for about three minutes before Alejandro Navarette-Garcia opened the door and told the agents that he neither lived in nor owned the residence. Appellant, Efrain Navarette-Garcia, Leticia Rodriguez-Fuentes, and Asuel Navarette-Vasquez were also found in the house.[6] Both Efrain and Alejandro told the agents they had been living at the house for several days after arriving from Mexico. Asuel told the agents that he had been living in the house for two weeks, and he consented to the officers' search of the house, despite the lack of a warrant.

Upon entering, the agents performed a protective sweep of the house, which revealed four weapons and a quantity of marijuana. Following this discovery, the agents placed under arrest all five of the people found in the home, including appellant.[7] After his arrest, Asuel refused to sign a consent to search form, so the agents sought and obtained a search warrant.

Upon execution of the search warrant, officers found the following contraband in the house: hidden in the attic, two guns; hidden in the fireplace chimney, a plastic container of methamphetamine; on the fireplace mantle, a ledger containing drug

---

[6] The occupants of the house will hereinafter be identified by their first names.

[7] Appellant, with Asuel, Leticia, Efrain, and Cristobal Pereira Rosales, were charged under a joint indictment with the crimes at issue here.

transaction notes; hidden inside the clothes dryer, a money counter; in a corner of the living room, a "shrine" related to drug trafficking; hidden inside a wall behind a medicine cabinet in one bathroom, five plastic containers of methamphetamine; and in the other bathroom, hidden inside a wall behind a medicine cabinet, a large quantity of cocaine, over $46,000 in cash, and notes regarding drug transactions. Additionally, a search of one bedroom, believed to have been shared by Efrain and Alejandro, revealed three guns: one under a mattress, one inside a suitcase, and one under a bed. The search of another bedroom, identified as room "E," revealed a gun under a pillow on a sleeping bag lying on the floor, two more guns in the bed, and a pair of plaid shorts and a dark colored t-shirt with a light colored logo across the chest.

FBI Special Agent Ronald Campbell testified that, during his surveillance of the house prior to executing the search warrant, he noticed a man exit the subject house and obtain a lawnmower from a neighboring house. The man, whom Campbell identified as appellant, then pushed the lawnmower back to 3070 Dowry Drive and proceeded to cut the grass. Campbell also identified the clothes located in bedroom "E" as the clothes appellant wore while cutting the grass.

Leticia testified at trial that she knew appellant because she had served him and the co-defendants several times before at the restaurant where she worked. Leticia testified that she was Asuel's girlfriend; that she saw appellant at the house when she was there cooking for the men about a week prior to the arrests; and that she had been in and out of the house on the night of the arrest in order to shop and cook for the men. Leticia stated that she saw appellant at the house earlier that day, and that she had seen him walk into bedroom "E" at least once.

Miguel Fulleda, the real estate agent who managed the house for its owner, stated that when he visited the house about a month earlier to collect the rent, he saw appellant there, playing cards with the co-defendants.

Appellant testified on his own behalf at trial, stating that he had been living in Roswell with a friend for the past three months. Appellant further testified that he had never visited 3070 Dowry Drive prior to the day of the arrest; and that he was at the house earlier that day because he was to be paid $50 to cut the grass. He borrowed clothes from another occupant in the house to wear while cutting the grass; afterwards, he left the clothing in bedroom "E." Appellant stated that he left the house because there was no one to pay him at that time. He was later told to arrive at the house around 10:00 p.m. to receive his payment. Once at the house, appellant testified

5

that he stood by the door because he did not know Alejandro or Efrain and did not feel comfortable sitting with them on the couch.

Appellant contends that the state failed to prove that he knowingly possessed the drugs because he was not the owner or lessee of the house; no contraband was found on his person; and the evidence did not link him with the drugs found hidden in the house. We agree.

An essential element of trafficking in cocaine and trafficking in methamphetamine is the *knowing possession* of 28 grams or more of the substances. Possession may be actual or constructive and joint or exclusive, but mere spatial proximity to the contraband is not sufficient to prove joint constructive possession,[8] "especially where, as here, the contraband is hidden."[9] Instead, the state must demonstrate that appellant had the power and intent to exercise dominion or control over the cocaine and methamphetamine.[10]

---

[8] *In re E. A. D.*, 271 Ga. App. 531, 532 (610 SE2d 153) (2005).

[9] (Citations omitted.) *Mitchell v. State*, 268 Ga. 592, 593 (492 SE2d 204) (1997).

[10] *Thurmond v. State*, 304 Ga. App. 587, 591 (2) (696 SE2d 516) (2010).

6

To do this, the state must provide "evidence of a connection linking the defendant to the contraband other than his mere spatial proximity."[11]

> A connection can be made between a defendant and contraband found in his presence by evidence which shows that the contraband was discovered on premises occupied and controlled by the defendant with no right of equal access and control in others. Such occupation and control may be inferred when the accused is the owner or tenant of the premises upon which the illicit drugs are discovered. However, a mere occupant, as distinguished from a resident, does not necessarily have the requisite control over the premises to authorize the inference that he possesses all property found thereon. If such were the case, a person's mere presence at the scene of the discovery of illegal drugs would authorize his conviction, and that plainly is not the law.[12]

Accordingly, "[e]vidence merely showing that contraband was found in a residence occupied by the defendant is simply insufficient to support a conviction, especially where other persons had equal access to the contraband and therefore an equal opportunity to commit the offense."[13]

---

[11] (Footnote omitted.) *Johnson v. State*, 245 Ga. App. 583, 584 (538 SE2d 481) (2000).

[12] (Citations omitted.) *In re E. A. D.*, supra at 532-533.

[13] (Footnote omitted.) *Johnson*, supra at 585.

In this case, it is undisputed that appellant did not reside at the home, so there is no presumption that appellant had control of the drugs. Rather, the state's arguments purporting to connect appellant to the drugs are that "no one is in a stash house containing drugs worth $750,000 at 10:30 p.m. unless they have a vested interest in what is inside"; that there was a visible drug-trafficking-related "shrine" in the living room and a ledger on the living room mantle; and that the occupants of the house had ample opportunity to hide the weapons during the "missing three minutes" between when the FBI agents first began knocking and when the door was answered. Additionally, the state points to evidence that the clothes appellant wore while mowing the grass were in bedroom "E"; however, none of the drugs were found hidden in that room. This evidence is circumstantial with regard to appellant's constructive possession of the contraband.

> "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused," OCGA § 24-4-6, although it is not necessary that such evidence be devoid of every inference or hypothesis except that of the defendant's guilt. Whether the circumstantial evidence is sufficient to exclude every reasonable hypothesis save that of defendant's guilt is a

question for the jury unless the verdict is insupportable as a matter of law.[14]

*Aquino*[15] involved a prosecution for trafficking in methamphetamine which was discovered in a black bag, hidden in a drawer of a house.[16] Defendant was found standing in the driveway; defendant's driver's license was found in the house; keys to the house were found on defendant's person; and defendant had been seen opening the door of the house while holding a black bag.[17] All of this evidence was circumstantial, however; there was nothing linking defendant to the drugs hidden in the house. This Court concluded that the evidence was insufficient to find defendant in constructive possession of the contraband because the state had not eliminated other reasonable hypotheses, including that others with access to the house could have been responsible for the drugs.[18]

---

[14] (Citations and punctuation omitted.) *Aquino*, supra at 166 (1).

[15] Id.

[16] Id. at 164.

[17] Id. at 163-164.

[18] Id. at 166-167.

Similarly, here, there is no evidence linking appellant to the drugs hidden in the house. Appellant can be linked to bedroom "E" because of the clothes identified by Campbell and because of Leticia's testimony, but no drugs were found hidden in that room. Although appellant's testimony regarding how many times he had visited 3070 Dowry Drive in the past conflicted with the testimony of Leticia and Fulleda, this does not link appellant to the contraband. "While the evidence creates the gravest suspicion that defendant may be guilty of the offense of which he was convicted, suspicion is not sufficient to support a conviction."[19] No drugs were found on appellant's person and he was not seen in proximity to the well-hidden drugs. Because the state did not provide evidence connecting appellant to the hidden drugs, the evidence did not exclude the hypothesis that the drugs belonged to the others residing in the home.[20] Under OCGA § 24-4-6, the trafficking convictions cannot

---

[19] (Citation and punctuation omitted.) Id. at 166.

[20] See id.

stand.[21] And, because appellant's conviction of possession of a firearm during commission of a felony hinges on these convictions, it also must be reversed.[22]

*Judgment reversed. Miller, J., concurs and Blackwell, J., concurs in judgment only.*

---

[21] See *Johnson,* supra at 585-586.

[22] See OCGA § 16-11-106 (b) (5); *Jackson v. State*, 309 Ga. App. 24, 29 (1) (b) (709 SE2d 44) (2011) (state's failure to prove predicate felony, hijacking, resulted in reversal of possession of firearm conviction).