**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 17, 2015**

# In the Court of Appeals of Georgia

A15A1301. HOLLAND v. THE STATE.                    JE-046C

ELLINGTON, Presiding Judge.

A Gwinnett County jury found Daunte Holland guilty beyond a reasonable doubt of trafficking in cocaine, OCGA § 16-13-31 (a); and possession of marijuana with intent to distribute, OCGA § 16-13-30 (j) (1), in violation of the Georgia Controlled Substances Act. Following the denial of his motion for a new trial, Holland appeals, challenging the sufficiency of the evidence and contending that he received ineffective assistance of counsel. For the reasons explained below, we reverse.

1. Holland contends that the State failed to adduce any evidence connecting him to the cocaine or marijuana that he is charged with unlawfully possessing; rather, he argues, the evidence proved no more than his mere presence in the house where

the contraband was found during the execution of a search warrant. Based on this, he contends that the evidence was insufficient to sustain his convictions.

On appeal from a criminal conviction, the appellate court

view[s] the evidence in the light most favorable to the verdict[,] and an appellant no longer enjoys the presumption of innocence. [The appellate court] determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, [the appellate court] must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

Viewed in the light most favorable to the verdict, the record shows that, on March 11, 2011, Gwinnett County police officers executed a search warrant at 999 Dallas Way, Lawrenceville. At trial, one officer, who entered the house with a SWAT team to execute the search warrant, testified that Holland was present in the house along with "a young female, Dasmine Holland, Dreshawn Tyler and Davante Holland, as well as a male, James Tab." The officer testified that Dasmine Holland and Davante Holland are Holland's children; Dreshawn Tyler is his stepchild; and "James

2

Tab is a friend who was helping [Holland] out at the time due to a leg injury." The officer summarized that the four males found in the house (Holland, Davante Holland, Dreshawn Tyler, and Tab) were all "over the age of 17 and 18."

That officer, who entered the house through the front door, described the house's floor plan as follows: the house is a split-level style house; entering from the front door, one enters a living room which has an area at the back set up for playing video games; at the rear of the game area is a sliding glass door leading into the back yard. In the living room, a split set of stairs leads either down into the garage/laundry room area or up to a hallway. The officer testified, "On the right side of the hallway, you have two bedrooms, Dreshawn Tyler's bedroom and Devante Holland's bedroom." The first door on the left side of the hallway is to a half bath; the second door on the left is to the master bedroom. At the end of the hall is a small closet. The master bedroom has an attached bathroom, and inside that bathroom is a set of stairs that lead up to a bonus room. Inside this bonus room is an access door to the attic. A second officer who searched the house testified similarly about the floor plan.

A third officer testified that he assisted in executing the search warrant and was assigned "as a containment on the back side of the house." Just before the SWAT team entered the house from the front, that officer noticed that the shade was up on

"the top left-hand window as you're facing the back of the house," and through the window he "could see two people inside the house[,] . . . an older male and a young female, early teens." He was able "after the fact" to identify the male as Holland. For twenty to thirty seconds, the officer saw Holland apparently sitting in that room while the girl walked in and out of the officer's view. That officer "never made it into the house" and never saw the layout of the house – "[j]ust right inside the sliding-glass door is as far as [he] got." Therefore, he could not identify the room he saw Holland in as the master bedroom, as opposed to any other room, but assumed it was the master bedroom "going by the [first officer's] drawing" of the floor plan during that officer's trial testimony.

During the search, the officers found in the master bedroom various quantities of powder and solid cocaine (in many, small plastic baggies), marijuana (also packaged in small baggies), two digital scales, and additional plastic baggies of various sizes. Some of the contraband was found in a drawer; some was found under a mattress or under the bed. In the attic, officers found more packages of powder and solid cocaine, marijuana, and a digital scale. Some of the packages of drugs were

lying in various places atop the insulation; more drugs and the scale were stuffed inside of a shoe and a boot.[1]

The State adduced evidence that an undercover officer bought crack cocaine from Holland on two separate occasions in 2001. Holland pled guilty to those charges, and the State tendered a certified copy of his prior convictions at trial. The State proffered the other-acts evidence solely on the issue of intent, and the trial court instructed the jury to limit its consideration of the evidence to that issue.

Holland's *knowing possession* of the cocaine found in the master bedroom and in the attic was an essential element of the offense of trafficking in cocaine as charged in the indictment. *Cobarrubias-Garcia v. State*, 316 Ga. App. 787, 789 (730 SE2d 455) (2012) (physical precedent only).[2] Similarly, his knowing possession of the marijuana found in those locations was an essential element of possession of

---

[1] A forensic chemist with the Georgia Bureau of Investigation tested the cocaine. The combined weight of all of the cocaine was over 400 grams. The chemist testified that all but one of the individual bags of cocaine she tested had a purity level of at least 10 percent.

[2] See OCGA § 16-13-31 (a) (1) ("Any person . . . who is in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine . . . in violation of [the Controlled Substances Act] commits the felony offense of trafficking in cocaine[.]").

5

marijuana with intent to distribute. See id.[3] "Possession of contraband may be actual or constructive. . . . A person who knowingly has direct physical control over a thing at a given time is in actual possession of it." (Citation and punctuation omitted.) *Lopez-Vasquez v. State*, 331 Ga. App. 570, 572 (1) (771 SE2d 218) (2015). In this case, the State adduced no evidence that Holland had direct physical control over any of the contraband found in the house. Consequently, it is undisputed that he was not in actual possession of the drugs, and the issue before us is whether he was in constructive possession of the drugs.

"A person may be found to have had constructive possession of contraband if it is shown that he had both the power and the intention at a given time to exercise dominion or control over it." (Citation and punctuation omitted.) *Aquino v. State*, 308 Ga. App. 163, 165 (1) (706 SE2d 746) (2011). See *Cobarrubias-Garcia v. State*, 316 Ga. App. at 789 (accord). But a finding of constructive possession cannot be based upon a defendant's mere spatial proximity to contraband at a given time; rather "a finding of constructive possession must be based upon some connection between the defendant and the contraband[.]" (Citation omitted.) *Stacey v. State*, 292 Ga. 838,

---

[3] See OCGA § 16-13-30 (j) (1) ("It shall be unlawful for any person to . . . possess with intent to distribute marijuana.").

6

839-840 (1) (a) (741 SE2d 881) (2013).[4] Further, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6.

In this case, the State failed to adduce any evidence that Holland owned or rented the house, such legal control as would give rise to a rebuttable presumption of possession of contraband found on the premises.[5] The State failed to adduce any

---

[4] See also *Mitchell v. State*, 268 Ga. 592, 593 (492 SE2d 204) (1997) ("A finding of constructive possession of contraband cannot rest upon mere spatial proximity to the contraband, especially where the contraband is hidden.") (citations omitted); *Cobarrubias-Garcia v. State*, 316 Ga. App. at 789-790 (To demonstrate that the defendant had the power and intent to exercise dominion or control over contraband, the State "must provide evidence of a connection linking the defendant to the contraband other than his mere spatial proximity.") (citation and punctuation omitted); *Hughes v. State*, 215 Ga. App. 6, 9 (1) (449 SE2d 547) (1994) ("A finding of joint or constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity. . . . Mere proof of the accused's presence at the scene of the crime, without any evidence to show further participation in the commission of the crime, is insufficient to authorize a conviction.") (citations and punctuation omitted).

[5] See *Cobarrubias-Garcia v. State*, 316 Ga. App. at 790 ("A connection can be made between a defendant and contraband found in his presence by evidence which shows that the contraband was discovered on premises occupied and controlled by the defendant with no right of equal access and control in others. Such occupation and control may be inferred when the accused is the owner or tenant of the premises upon which the illicit drugs are discovered.") (punctuation and footnote omitted); *Dickerson v. State*, 312 Ga. App. 320, 321 (1) (718 SE2d 564) (2011) ("If the State

7

evidence that Holland occupied the master bedroom or that he kept personal belongings there.

Viewed in the light most favorable to the jury's guilty verdict, the only evidence that he had even *entered* the specific locations in the house where the drugs were found (the master bedroom and the attic, which could be reached from the master bedroom) was the testimony of the containment officer who saw him for twenty to thirty seconds through a window which the officer assumed to be the master bedroom. There was no evidence that Holland had ever been in the attic.

In addition to the lack of evidence connecting Holland specifically to the locations in the house where the drugs were found, the State did not even prove that Holland lived at that address, had keys to the house, kept personal belongings anywhere in the house, or received mail there. In fact, the State failed to adduce any evidence that Holland had been inside the house any earlier than scant moments

presents evidence that a defendant owned or controlled premises where contraband was found, it gives rise to a rebuttable presumption that the defendant possessed the contraband. This presumption of constructive possession arising from ownership or control of the premises can be overcome by evidence that other persons had equal access to the contraband found there.") (citations and punctuation omitted); *Emerson v. State*, 220 Ga. App. 485, 487 (2) (469 SE2d 520) (1996) ("A rebuttable presumption arises when one leases premises, and contraband is found therein, that the lessee is in possession of the entire premises and all the property found on the premises.") (citation and punctuation omitted).

8

before the search began. The evidence showed, at most, that Holland had momentary access to the master bedroom just before contraband was found there.

> [A] mere occupant, as distinguished from a resident, does not necessarily have the requisite control over the premises to authorize the inference that he possesses all property found thereon. If such were the case, a person's mere presence at the scene of the discovery of illegal drugs would authorize his conviction, and that plainly is not the law. Accordingly, evidence merely showing that contraband was found in a residence occupied by the defendant is simply insufficient to support a conviction, especially where other persons had equal access to the contraband and therefore an equal opportunity to commit the offense.

(Punctuation and footnotes omitted.) *Cobarrubias-Garcia v. State*, 316 Ga. App. at 790 (physical precedent only). See also *Johnson v. State*, 245 Ga. App. 583, 585 (538 SE2d 481) (2000) (accord).

Because the State failed to show that a presumption of possession applies, and failed to adduce any evidence to connect Holland to the drugs found in the master bedroom and the attic, the evidence was insufficient to sustain his convictions for trafficking in cocaine and possession of marijuana with intent to distribute. *Mitchell v. State*, 268 Ga. at 593; see *Cobarrubias-Garcia v. State*, 316 Ga. App. at 790-791 (Evidence of possession of drugs was insufficient, where the contraband was located

9

hidden in the chimney, inside the wall in two bathrooms, and inside one bedroom, when the defendant was found standing near the front door, although clothes the defendant had worn were found in another bedroom.); *Aquino v. State*, 308 Ga. App. 163, 164-168 (1) (706 SE2d 746) (2011) (Evidence of possession of methamphetamine was insufficient, where the contraband was located inside a locked house in a black bag in a drawer when the defendant was found standing in the driveway, even though the defendant's driver's license was found inside in a bedroom, the defendant had on his person a key to the house and to a car parked there whose tag was inside the house, and the defendant had been seen opening the door of the house while holding a black bag.).[6]

---

[6] Cf. *Whitfield v. State*, 217 Ga. App. 402, 405 (3) (457 SE2d 682) (1995) (Evidence that the defendant lived in an apartment with the named lessee, the defendant was in the master bedroom at the time of the search, the defendant had $780 in cash in his pockets at that time, and the defendant previously sold cocaine at the same apartment to an undercover officer was sufficient to connect the defendant to cocaine and marijuana found in various locations in the apartment during the execution of a search warrant and thus authorized a finding of possession.); *Pamplin v. State*, 164 Ga. App. 610-611 (1) (298 SE2d 622) (1982) (Although the evidence showed that others had equal access to premises where drugs were found, evidence was sufficient to connect the defendant to the contraband and thus authorized a finding of possession where there was evidence that the defendant resided in the apartment and the drugs were found in a drawer in the apartment's only bedroom under a loaded pistol that belonged to the defendant.).

2. In light of our holding in Division 1, supra, Holland's remaining claim of error is moot.

*Judgment reversed. McFadden, J., concurs and Dillard, J., concurs in judgment only.*

A15A1301. HOLLAND v. THE STATE.                                    DI-046C

DILLARD, Judge, concurring in judgment only.

I concur in judgment only because I do not agree with all that is said in the majority opinion. As a result, the majority's opinion decides only the issues presented in the case sub judice and may not be cited as binding precedent. See Court of Appeals Rule 33 (a).