**SECOND DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J. and RICKMAN, P. J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**May 16, 2025**

# In the Court of Appeals of Georgia

A25A0567. BROWN v. THE STATE.

RICKMAN, Presiding Judge.

Following a jury trial, Drevoisier Brown was convicted on one count of armed robbery, one count of aggravated assault, one count of violation of the Street Gang Terrorism and Prevention Act, and one count of trafficking methamphetamine in violation of the Georgia Controlled Substances Act.[1] Brown argues that the evidence was insufficient to sustain his convictions. He further argues that the trial court

---

[1] In addition to the charges listed above, Brown was also charged with and found guilty of an additional count of armed robbery, an additional count of aggravated assault, and one count each of possession of methamphetamine with intent to distribute and possession of methamphetamine, but those counts merged with his other convictions for sentencing purposes. See OCGA § 16-1-7 (a); see *Drinkard v. Walker*, 281 Ga. 211, 212-213 (636 SE2d 530) (2006). He was also charged with burglary in the second degree, but the trial court entered an order of nolle prosequi as to that count.

committed plain error by admitting evidence related to a tracking dog without a proper foundation and abused its discretion by removing a juror. We affirm Brown's convictions on armed robbery, aggravated assault, and violation of the Street Gang Terrorism and Prevention Act, but agree with him that the evidence was insufficient to establish that he violated the Georgia Controlled Substances Act. Accordingly, we reverse his conviction on trafficking methamphetamine, as well as the lesser charges that merged into that conviction for sentencing purposes, and remand this case for resentencing in accordance with this opinion.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LEd2d 560) (1979).

(Citation and punctuation omitted.) *Johnson v. State*, 340 Ga. App. 429, 430 (797 SE2d 666) (2017).

So construed, the evidence adduced at trial showed that on the evening in question, the victim was working as a clerk in a convenience store when two masked

men entered the store. One of the men pointed a gun at the victim and demanded that she not look at him, while the other came around the counter, took the victim's purse, and began filling it with the cash from the store's registers. The men fled the store with the victim's purse containing both the money from the store's registers and the victim's wallet and other personal items. The victim called 911 after the men left.

Upon arriving to the scene, an investigator viewed the store's surveillance video and determined the direction the perpetrators fled upon leaving the store. A K-9 unit then tracked the perpetrators' scent from the convenience store to a ski mask abandoned in the grass a short distance away. Meanwhile, the investigator viewing the surveillance footage noticed that one of the perpetrators pushed the store's glass door open with an ungloved hand. He thereafter lifted and developed a latent fingerprint from that area of the glass and ran it through a law enforcement database. The fingerprint was determined to match that of Brown's accomplice, Lend Jefferson.

The investigator, who was familiar with Brown's accomplice, subsequently went onto the accomplice's social media account and viewed a video that had been posted less than 15 minutes after the robbery. The video showed Brown singing and flashing large sums of cash. The investigator also viewed other pictures from the same

social media account in which Brown's accomplice wore clothing and shoes that appeared to match the clothing worn by the gunman as seen in the store's surveillance footage.

Law enforcement officers thereafter obtained an arrest warrant for Brown's accomplice and went to his last known address, a home located near the convenience store, to execute the warrant. There, they located Brown, his accomplice, and his accomplice's girlfriend. In the process of clearing the home, the officers observed a clear corner bag containing what appeared to be a small amount of narcotics and a box of ammunition in plain view inside. Consequently, a warrant to search the house was obtained.

The ensuing search of the disheveled home resulted in the discovery of the victim's purse, wallet, and other personal items strewn amongst the trash, laundry, and other items littering the floor. Included in the disarray was clothing and shoes resembling those worn by both perpetrators as seen in the store's surveillance footage. The officers also seized a bag containing various pills that were later determined to consist of more than 28 grams of methamphetamine and a scale, both of which were recovered in the bedroom from which Brown and his accomplice emerged upon the

officers' arrival. Brown's wallet containing his identification card,[2] as well as paperwork containing his name, were located inside a small safe containing over $350 in cash that was found in "a makeshift living area" in the common area of the house. Finally, a handgun similar to that used in the armed robbery was discovered in the accomplice's girlfriend's car parked in front of the house, and the ammunition in the gun matched that which was found inside the home.

Brown, his accomplice, and his accomplice's girlfriend were all subsequently arrested and charged with various crimes, although they were each tried separately. During Brown's trial, the State presented expert testimony that certain of Brown's tattoos and other exhibited behaviors indicated his involvement in a street gang, and admitted text messages extracted from Brown's cellular phone that included references to drugs. In addition, evidence was presented that the ski mask found abandoned near the scene of the robbery contained Brown's DNA.

---

[2] We note that one of the officers testified that "to the best of [his] recollection," all three of the perpetrators' identification cards were found in the bedroom in which the drugs were found. There was definitive testimony and photographic evidence presented, however, that Brown's identification card was located in the safe found in the common area of the house. Regardless, even if a second form of Brown's identification was found interspersed amongst the other items in the bedroom, it would not affect the outcome of this opinion.

The jury convicted Brown, who then filed a motion for new trial. The trial court denied the motion, and this appeal followed.

1. Brown contends that the evidence was insufficient to support his convictions. Arguing that the State's case was based solely on circumstantial evidence, he asserts with respect to the crimes of armed robbery and aggravated assault that the State failed to prove his identity; as to the crime of trafficking in methamphetamine, he asserts that the State failed to prove possession.[3]

> When a conviction is based on circumstantial evidence, OCGA § 24-14-6 requires that the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other *reasonable* hypothesis save that of the guilt of the accused. Whether any alternative hypotheses are reasonable and whether the circumstantial evidence excludes any such hypotheses are questions for the jury, and we will not disturb the jury's findings on those questions unless they are insupportable as a matter of law.

(Citation and punctuation omitted; emphasis in original.) *Wilson v. State*, 319 Ga. 550, 553 (1) (905 SE2d 557) (2024). We will address each of Brown's arguments in turn.

---

[3] Brown does not challenge the sufficiency of the evidence underlying his conviction on violation of the Street Gang Terrorism and Prevention Act.

(a) Brown maintains that the circumstantial evidence presented at trial was insufficient to establish his identify as a perpetrator of the armed robbery and aggravated assault. Even assuming that the identity evidence against him was solely circumstantial, it was nevertheless substantial and legally sufficient.

Specifically, within 15 minutes of the store being robbed, Brown was seen in a social media post displaying large sums of cash. He was located in a home containing the victim's belongings, clothing and shoes matching that worn by the perpetrators as seen in the surveillance video, and ammunition for a handgun similar to that used in the robbery located in a car in front of the home. Brown's DNA was present in a mask that was used in and found near the scene of the robbery. Although Brown points out that a female's DNA was also present in the mask and argues that the accomplice's girlfriend could have been the second assailant, the victim testified definitively that both perpetrators were male. The jury was free to reject Brown's alternative hypothesis that the girlfriend committed the crimes. See *Minor v. State*, 328 Ga. App. 128, 131 (1) (761 SE2d 538) (2014) ("[I]t is not sufficient that the circumstantial evidence show that the act might by bare possibility have been done by somebody

else") (citation and punctuation omitted); see also *Roberts v. State*, 322 Ga. App. 659, 662-663 (2) (a) ( 745 SE2d 850) (2013).

(b) Brown also contends there was insufficient evidence to support a finding that he possessed the trafficking amount of methamphetamine found in the home. On this point, we agree.

To establish the crime of trafficking in methamphetamine, the State was required to prove that Brown was at least in joint possession of 28 grams or more of the drug. See OCGA § 16-13-31 (e) ("[A]ny person who . . . has possession of 28 grams or more of methamphetamine . . . commits the felony offense of trafficking in methamphetamine[.]"); see *Ashley v. State*, 374 Ga. App. 153, 156 (1) (911 SE2d 701) (2025). Possession may be actual or constructive and joint or exclusive, but "mere spatial proximity to the contraband" is not sufficient to prove joint constructive possession. *Holland v. State*, 334 Ga. App. 600, 602 (1) (780 SE2d 40) (2015). This is particularly true when the contraband is not in plain view. See *Mitchell v. State*, 268 Ga. 592, 593 (492 SE2d 204) (1997). Instead, the State must demonstrate that appellant had "the power and the intention at a given time to exercise dominion or control over" the drugs. (Citations and punctuation omitted.) *Lebis v. State*, 302 Ga.

750, 753 (II) (808 SE2d 724) (2017). To do this, there must be evidence of a connection linking the defendant to the contraband other than his mere spacial proximity. See *Holland*, 334 Ga. App. at 602 (1). Significantly,

> [a] connection can be made between a defendant and contraband found in his presence by evidence which shows that the contraband was discovered on premises occupied and controlled by the defendant with no right of equal access and control in others. Such occupation and control may be inferred when the accused is the owner or tenant of the premises upon which the illicit drugs are discovered. However, a mere occupant, as distinguished from a resident, does not necessarily have the requisite control over the premises to authorize the inference that he possesses all property found thereon.

(Citation and punctuation omitted.) *Cobarrubias-Garcia v. State*, 316 Ga. App. 787, 790 (730 SE2d 455) (2012) (physical precedent only). "Circumstances showing an intent to exercise control over the drugs include a defendant's attempts to flee or elude police; inconsistent explanations by the defendant for [his] behavior; the presence of significant amounts of contraband and drug paraphernalia in plain view; the defendant's possession of large amounts of cash, other indicia of the sale of drugs, or drug-related paraphernalia; evidence that the defendant was under the influence of

9

drugs; or drug residue found on the defendant." *Kier v. State*, 292 Ga. App. 208, 210 (1) (663 SE2d 832) (2008).

Here, it is undisputed that the home at issue belonged to the accomplice's girlfriend, and the drugs were found inside of a bag that was inside of a cubby in the bedroom occupied by her and the accomplice. The evidence against Brown consisted of evidence suggesting he stayed in "a makeshift living area" in the common area of the house; he emerged from the bedroom in which the drugs were hidden along with the two other occupants of the house upon the officers' arrival; he kept his identification card and $350 cash in a small safe in the common area of the house; and his text messages contained a couple of cryptic references to "ice," which an expert witness testified was a commonly-used word for methamphetamine.

We cannot conclude that this evidence was legally sufficient to connect Brown to the hidden contraband and to exclude the reasonable hypothesis that the drugs belonged to one or both of the individuals who occupied the bedroom in which they were found. "[W]hen the circumstantial evidence supports more than one theory, one consistent with guilt and another with innocence, it does not exclude every other reasonable hypothesis except guilt and is not sufficient to prove the defendant's guilt

beyond a reasonable doubt." (Citation and punctuation omitted.) *Hill v. State*, 360 Ga. App. 143, 148 (860 SE2d 893) (2021); see *Brooks v. State*, 206 Ga. App. 485, 486-487 (1) (425 SE2d 911) (1992) ("While the determination of whether the circumstances are sufficient to exclude every reasonable hypothesis except that of defendant's guilt is usually made by the jury and while we must review the evidence in the light most favorable to the jury verdict, we must not be blinded by that verdict when a reasonable hypothesis of innocence appears from the evidence or lack thereof, and may declare such as a matter of law.") Accordingly, we reverse Brown's conviction on trafficking in methamphetamine. See *Hill*, 360 Ga. App. at 151 (reversing appellant's trafficking convictions because, in the absence of evidence that he owned or lived in the home in which he was found, his failing to come to the door and hiding when police entered, his driver's license on the kitchen sink, the presence of digital scales in plain view, and the high street value of the hidden drugs rendering it unlikely they would be left unattended was insufficient to link him to the contraband found in the home); *Cobarrubias-Garcia*, 316 Ga. App. at 791 (holding evidence was insufficient to support trafficking and possession convictions because appellant was found inside a home that he did not own or lease, no drugs were found on his person, and he was not seen in

11

proximity to the well-hidden drugs); see also *O'Neill v. State*, 285 Ga. 125, 128-129 (674 SE2d 302) (2009).

Because we are reversing Brown's trafficking conviction, his convictions on possession of methamphetamine with intent to distribute and possession of methamphetamine are no longer merged. The evidence supporting those convictions was legally insufficient also, however, and they too must be reversed.

Just as with the trafficking conviction, the State failed to establish that Brown possessed the methamphetamine found hidden in the bedroom so as to support his conviction on possession of methamphetamine with intent to distribute. See OCGA § 16-13-30 (b). Further, because the record contains no testimonial or other evidence identifying the contents of what appeared to be a small amount of narcotics seen in plain view by the officers upon their entry into the home, Brown's conviction on possession of methamphetamine also must be reversed. See generally *DeLong v. State*, 310 Ga. App. 518, 522 (2) (714 SE2d 98) (2011) (reversing appellant's conviction under the Georgia Controlled Substances Act because the State failed to carry its burden of proving by competent evidence that the substance at issue was regulated by law).

2. Brown argues that, although no objection was made by the defense, the trial court committed plain error when it failed to exclude testimony about the K-9 tracking dog without first requiring that the State lay a proper foundation as to the dog's training and experience in tracking.[4]

There is a four-factor test for plain error:

First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted.) *Johnson v. State*, 348 Ga. App. 831, 836 (3) (823 SE2d 351) (2019).

---

[4] Brown also argues that the trial court committed plain error when it instructed the jury on the law of conspiracy without limiting that instruction to the charges related to the armed robbery and excluding its application to the drug charges. We need not consider this enumeration of error in light of our reversal of Brown's drug convictions.

13

Under Georgia law, when testimony regarding a tracking dog's behavior is used as a evidence tending to prove a crime was committed and/or to connect an accused to the crime with which he or she is charged, foundational evidence as to the training and experience of the dog is a prerequisite to its admission:

> [E]vidence as to the conduct of dogs in following tracks should not be admitted until after a preliminary investigation in which it is established that one or more of the dogs in question were of a stock characterized by acuteness of scent and power of discrimination, and had been trained or tested in the exercise of these qualities in the [use of] tracking . . ., and were in the charge of one accustomed to use them. It must also appear that the dogs so trained and tested were laid on a trail, whether visible or not, concerning which testimony has been admitted, and upon a track which the circumstances indicate to have been made by the accused. When these preliminary tests have been made, the fact of tracking by a bloodhound may be permitted to go to the jury as one of the circumstances which may tend to connect the defendant with the crime with which he is charged.

(Citation and punctuation omitted.) *Johnson v. State*, 293 Ga. App. 32, 36 (3) (666 SE2d 452) (2008). Nevertheless, such foundational evidence is not necessary if the conduct of the tracking dog is not relevant to the question of whether the accused committed the crimes charged. See *Al-Amin v. State*, 278 Ga. 74, 81 (10) (597 SE2d

14

332) (2004), overruled in part on other grounds, *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020) (holding the trial court did not err by admitting evidence that a tracking dog was used to "flush [appellant] out of a wooded area" without foundational evidence because "it was not germane to the question of whether defendant committed the crimes charged but was relevant only to prove the manner in which law enforcement officers apprehended the suspect") (citation and punctuation omitted); see also *Ingram v. State*, 211 Ga. App. 821, 821 (1) (441 SE2d 74) (1994).

Here, evidence that the tracking dog located the ski mask in an area near the location of the armed robbery was not used to prove that Brown committed the crimes, but rather to explain the circumstances regarding law enforcement's discovery of that mask. Brown's guilt was subsequently established, not only by his DNA that was extracted from the mask, but also by the physical evidence discovered in the house and the video evidence posted on a social media account. Under these circumstances, the trial court did not err, much less commit plain error, by failing to exclude testimony regarding the tracking dog due to the lack of foundational testimony. *See Smith v. State*, 261 Ga. App. 871, 878 (5) (c) (583 SE2d 914) (2003) (holding that any foundational objection to testimony regarding a tracking dog's discovery of

appellant's gun would have been futile because "the testimony was not being offered as to the substance or identification of the gun and . . . the dog's identification did not associate the gun with [appellant]") (punctuation omitted). Compare *Carr v. State*, 267 Ga. 701, 712 (1) (482 SE2d 314) (1997), overruled on other grounds, *Clark v. State*, 271 Ga. 6, 10 (5) (515 SE2d 155) (1999) (requiring foundational evidence when the testimony concerning the dog alert was offered as substantive evidence of the presence of accelerants, and thus bore directly on the guilt of the accused on arson and murder charges).

3. Brown contends that the trial court abused its discretion by excusing a juror over his objection. He argues specifically that the trial court should have first admonished the juror before her dismissal.

On the second day of trial testimony, an alarm sounded from one of the juror's watches. The juror apologized and turned off the alarm, and the trial resumed. Shortly thereafter, the judge sua sponte interrupted the witness's testimony and requested that counsel for both parties approach the bench. The trial court informed counsel that the juror in question had not been paying attention and had been communicating

on her watch, and asked if there was any objection to her being dismissed. Brown's counsel requested that he be allowed to question the juror.

Upon counsel's questioning of the juror outside the presence of the remaining jurors, she denied having been communicating on her watch, but both the judge and the bailiff stated that they had seen her throughout the two days of testimony reading or communicating on her watch. The trial court excused the juror over Brown's objection.

The decision of whether to remove a juror is within the trial court's discretion, although there must be "some sound basis" upon which the trial court exercises that discretion. See *Jones v. State*, 314 Ga. 214, 222 (2) (b) (875 SE2d 737) (2022); see OCGA § 15-12-172. "A sound basis may be one which serves the legally relevant purpose of preserving public respect for the integrity of the judicial process." (Citation and punctuation omitted.) *Jones*, 314 Ga. at 222-223 (2) (b).

Here, the trial judge personally observed what the court determined to be a concerning amount of inattentiveness by the juror. In so doing, the judge explained:

> [S]he was about 15 or 20 minutes late on [the first day of trial]. Technically, she was late today. And I have been concerned. I've been watching her. And at first, I thought she was taking notes. I -- I've seen

17

her head down, not looking at the witness, for minutes and minutes on end, thinking that, well, she's taking notes. But after what I saw today, I'm convinced that it -- both yesterday and today, she has spent minutes on top of minutes scrolling and tapping on her smartwatch, which is key to her cell phone. I have no idea how much testimony she's missed in this case, and I think it would be unfair to both sides. . . . I don't think she's heard all the evidence and I think it would be a travesty of justice to leave her on there[.]

After the jurors were excused for the day, the judge confirmed with the bailiff that the juror had not taken any notes on the notepad provided.

Brown has failed to show the trial court abused its discretion by dismissing the juror in question. See generally *Rivera v. State*, 282 Ga. 355, 361-362 (7) (647 SE2d 70) (2007) (holding trial court did not abuse its discretion by dismissing a juror who returned half hour late from lunch and had ongoing childcare issues); *Freeman v. State*, 291 Ga. App. 651, 654 (3) (662 SE2d 750) (2008) (affirming trial court's removal of juror amid concern about the juror's inability to stay awake and fear the juror would conduct independent research into the case). Cf. *Buwee v. State*, 359 Ga. App. 321, 326 (2) (857 SE2d 498) (2021) (affirming trial court's striking of juror for cause fearing the juror would ignore evidence in an effort to avoid feeling stressed so as to protect his

own health). Although the juror at issue denied having been communicating on her watch, "[w]e defer to the trial court's ability . . . to observe [the juror] in person and take account of [her] demeanor and countenance, not just the words that [she] spoke." *Buwee*, 359 Ga. App. at 326 (2). To the extent Brown argues that he should have been permitted to question the bailiff under oath about the bailiff's own observations, he failed to make any such request to the trial court and has thus waived that argument on appeal. See *Keaton v. State*, 311 Ga. App. 14, 20 (4) (714 SE2d 693) (2011) ("A party may not complain on appeal of a ruling that he contributed to or acquiesced in by his own action, trial strategy, or conduct.") (citation and punctuation omitted).

*Judgment affirmed in part; reversed in part and case remanded. Mercier, C. J. and McFadden, P. J., concur.*