## A07A1782. ARELLANO v. THE STATE.
(656 SE2d 264)

BARNES, Chief Judge.

A jury found Efrain Arellano guilty of trafficking in methamphetamine, operating a vehicle that lacked a valid license tag, and driving without a license. Arellano appeals, claiming that he received ineffective assistance of counsel at trial. For reasons that follow, we affirm.

Viewed favorably to the jury's verdict, the evidence shows that at approximately 7:20 a.m. on October 18, 2003, an officer with the Smyrna Police Department saw a car driving without a tag light and with taillights that were not visible within the required 500-foot distance. The officer pulled behind the vehicle, which changed lanes. When the officer again moved behind the car, it changed lanes a second time, raising the officer's suspicion.

Based on the tag light violation, the officer stopped the car and saw that the driver, whom he identified as Arellano, was alone in the vehicle. Arellano appeared nervous, was unable to sit still, and was constantly "looking around." Noting that the car had a drive-out tag without the required expiration date, the officer asked Arellano for the vehicle's paperwork, such as a bill of sale. Arellano indicated that he owned the car, but that he did not have any paperwork or a driver's license. He then produced an insurance card bearing someone else's name and admitted that the car belonged to that individual. He could not, however, provide any contact information for the owner. Using the vehicle identification number, the officer determined that the car had been issued a Georgia license tag that had expired the previous month.

The officer arrested Arellano for driving without a license and impounded the vehicle after inventorying its contents. During the inventory, the officer discovered that the car was equipped with a potentially illegal nitrous oxide system typically used for street racing. He looked into the car trunk both for purposes of the inventory and to find the nitrous oxide tanks. The officer did not locate any tanks in the trunk, but he found the expired license tag, as well as a speaker box with two compartments. Inside one compartment, the officer discovered a bag containing over 400 grams of methamphetamine with a street value of approximately $134,000.

At the time of the traffic stop, the drugs were wet, which is consistent with "freshly manufactured" methamphetamine. The State also presented evidence that drug traffickers sometimes use cars registered in another person's name to transport drugs.

On appeal, Arellano argues that his counsel provided him ineffective assistance at trial. To succeed in this claim, Arellano must "show both that counsel's performance was deficient and that but for this deficiency, there is a reasonable probability that the outcome of the trial would have been different." *Patterson v. State*, 272 Ga. App. 675, 679 (5) (613 SE2d 200) (2005).

1. Arellano argues that counsel was ineffective in not moving for a directed verdict following the State's case. As discussed below, however, the evidence was sufficient to sustain the jury's verdict. And where the trial evidence is sufficient, counsel's failure to move for a

directed verdict does not constitute deficient performance. See *Patterson*, 272 Ga. App. at 679 (5) (b).

(a) Absent contrary evidence, "the driver of an automobile is presumed to have possession and control of drugs found in the vehicle." (Footnote omitted.) *McGee v. State*, 287 Ga. App. 460, 461 (651 SE2d 546) (2007). Although evidence that other persons had equal access to the car or contraband may rebut this presumption, the equal access rule only applies when the defendant's control over the car constitutes the sole evidence of possession. See id. Moreover, the jury "must determine whether the equal access evidence sufficiently rebuts the presumption of possession." (Footnote omitted.) Id.

Noting that someone else owned the car containing the drugs, Arellano raised an equal access argument at trial. But the link between Arellano and the methamphetamine was not based solely on his operation of the vehicle.

For example, when the arresting officer first pulled behind the car, Arellano tried to avoid him. See *Wilkerson v. State*, 269 Ga. App. 190, 192-193 (2) (603 SE2d 728) (2004) (speculation that others had equal access to car did not undermine conviction, particularly where defendant drove evasively when confronted by police). Furthermore, the methamphetamine was "fresh," indicating that it had not been in the car very long. And its significant street value undermined any claim that someone simply left it in the vehicle. See *McGee*, 287 Ga. App. at 462 (although defendant did not own car he was driving, other evidence — including that hidden cocaine had high street value and likely would not have been abandoned by someone else in car trunk — demonstrated connection between defendant and the contraband). Finally, Arellano was unusually nervous following the traffic stop. See *Fernandez v. State*, 275 Ga. App. 151, 155 (2) (619 SE2d 821) (2005) (evidence that car occupants were extremely nervous following traffic stop supported inference of guilty knowledge regarding drugs hidden in car).

Given this evidence, the jury was authorized to reject Arellano's equal access claim and find that he knowingly possessed the methamphetamine. See *McGee*, supra; *Fernandez*, supra; *Wilkerson*, supra. Trial counsel, therefore, was not deficient in failing to move for a directed verdict on this count. See *Patterson*, 272 Ga. App. at 679 (5) (b); OCGA § 16-13-31 (e) (person who knowingly possesses more than 28 grams of methamphetamine commits the offense of trafficking).

(b) Arellano admittedly lacked a driver's license, and although the car was registered and had a license tag, the tag was expired. The jury, therefore, was authorized to find him guilty of driving without a license and operating a vehicle without a valid license tag. See OCGA §§ 40-5-20 (prohibiting driving without a valid license); 40-2-8 (b) (2) (A) ("It shall be a misdemeanor to operate any vehicle required

to be registered in the State of Georgia without a valid numbered license plate properly validated.").

Arellano suggests, apparently based on the drive-out tag affixed to the car, that the vehicle was newly purchased and thus fell within the initial 30-day registration period during which a numbered license plate is not required. See OCGA § 40-2-8 (b) (2) (A) (purchaser of new or used car may operate vehicle without numbered license plate during 30-day registration period provided in OCGA §§ 40-2-20 (a) (1) (B) (i) and 40-2-21 (a) (.1)). But the drive-out tag itself lacked an expiration date and thus was invalid. See OCGA § 40-2-8 (b) (2) (A), (b) (2) (B) (i). Compare *Brackins v. State*, 249 Ga. App. 788, 789 (1) (549 SE2d 775) (2001) (reversing conviction for driving without a proper license tag because State failed to offer evidence that the drive-out tag on the car was invalid).

Moreover, based on the evidence presented — including that the drive-out tag was improper, that Arellano produced no paperwork during the traffic stop suggesting that the car had recently been purchased, that an expired tag was associated with the vehicle's identification number, and that the arresting officer located the expired tag in the car trunk — the jury was authorized to conclude that Arellano was driving a car without a valid tag, rather than a newly purchased vehicle. Accordingly, we find no deficiency in trial counsel's failure to move for a directed verdict. See *Patterson*, 272 Ga. App. at 679 (5) (b).

2. Arellano claims that counsel should have requested a judgment notwithstanding the guilty verdict as to the license tag violation. Georgia law, however, does not authorize a motion for judgment notwithstanding the verdict in criminal cases. See *Moody v. State*, 272 Ga. 55, 56, n. 2 (525 SE2d 360) (2000). Counsel's failure to make such a motion, therefore, cannot support an ineffective assistance claim. See *Winfrey v. State*, 286 Ga. App. 718, 724 (6) (a) (650 SE2d 262) (2007) (" 'A trial attorney's failure to make a meritless or futile motion does not provide a basis for finding that the defendant received ineffective assistance of counsel.' ") (citation omitted).

3. At trial, the defense theory focused on Arellano's claimed lack of knowledge about the drugs in the trunk. Arellano now argues that trial counsel should have investigated and pursued other defenses. But "[c]ounsel's decision as to which theory of defense to pursue is a matter of strategy and tactics; and, as a general rule, matters of tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citations and punctuation omitted.) *Craft v. State*, 254 Ga. App. 511, 521 (13) (563 SE2d 472) (2002). Moreover, counsel's strategic decisions are "not judged by hindsight, result, or how another lawyer may have conducted the defense."

(Punctuation and footnote omitted.) *Worthman v. State*, 266 Ga. App. 208, 213 (5) (596 SE2d 643) (2004).

We recognize that a patently unreasonable strategy may give rise to an ineffective assistance claim. See *Harris v. State*, 279 Ga. App. 570, 575-576 (3) (631 SE2d 772) (2006). Arellano, however, has not shown that trial counsel acted unreasonably. Although he contends that counsel should have challenged the legality of the initial traffic stop by arguing that, at the time of the stop, the lighting conditions rendered a tag light unnecessary, he offered no evidence of the lighting conditions at the hearing on his motion for new trial. Furthermore, the arresting officer testified that the light was dim, preventing him from determining whether the vehicle had any type of tag. Counsel, therefore, was not ineffective in failing to question the stop on this ground. See OCGA § 40-8-20 (lights on vehicle required "when there is not sufficient visibility to render clearly discernible persons and vehicles ... at a distance of 500 feet ahead"); *Richardson v. State*, 283 Ga. App. 89, 91 (640 SE2d 676) (2006) (traffic stop justified where evidence supported conclusion that dim lighting conditions required vehicle lights under OCGA § 40-8-20).

Arellano also argues that counsel should have pursued strategies relating to the arresting officer's testimony about the tint on the vehicle windows, the nitrous oxide system, and street racing. Arellano, however, was not charged with any crimes relating to this testimony.

Moreover, we find no merit in Arellano's suggestion that trial counsel could have challenged the methamphetamine seizure had she known more about nitrous oxide systems and placement of nitrous oxide tanks. Although the officer looked inside the trunk for evidence of the tanks, he also searched the area and found the drugs as part of his pre-impound inventory search. Arellano has not challenged the validity of the inventory search or argued that the officer exceeded its proper scope. We fail to see, therefore, how counsel acted unreasonably by failing to further investigate the nitrous oxide system.

4. Arellano contends that counsel deficiently "supplied the jury charge that allowed the jury to convict" him. Specifically, he questions counsel's decision to request an equal access charge that highlighted the rebuttable presumption of possession that arises from operation of a vehicle. The transcript of the charge conference shows, however, that the State requested a similar charge on the presumption of possession. And as noted above, trial counsel's defense centered on the theory that Arellano knew nothing about the drugs and that others, particularly the car owner, had equal access to the contraband. The charge submitted by counsel presented this theory.

"Decisions about which jury charges to request are strategic and provide no grounds for reversal unless . . . so patently unreasonable that no competent attorney would have chosen them." (Punctuation and footnote omitted.) *Wilburn v. State*, 278 Ga. App. 76, 78 (2) (b) (628 SE2d 174) (2006). Although Arellano and his current counsel now question trial counsel's equal access defense, we cannot agree that the requested charge was patently unreasonable. Accordingly, Arellano has not shown ineffective assistance on this ground. See id.

5. Finally, Arellano claims that trial counsel should have known that an equal access defense would fail, given his decision not to testify at trial. Arellano, however, neglected to question trial counsel about this issue at the hearing on his motion for new trial. We have no insight, therefore, into counsel's decision-making on this matter, and Arellano has not overcome the presumption that counsel's decision fell "within a wide range of reasonable, professional conduct." (Citation and punctuation omitted.) *Leaptrot v. State*, 272 Ga. App. 587, 594 (2) (d) (612 SE2d 887) (2005).

Furthermore, the link between Arellano and the methamphetamine was only circumstantial. And by cross-examining the State's witnesses, trial counsel obtained testimony that Arellano did not own the car and that the police failed to investigate the possibility that the drugs belonged to someone else, such as the vehicle owner. Under these circumstances, trial counsel's decision to pursue an equal access defense without Arellano's testimony was not patently unreasonable.

*Judgment affirmed. Smith, P. J., and Miller, J., concur.*

DECIDED JANUARY 9, 2008.

*Sidney L. Storesund*, for appellant.
*Patrick H. Head, District Attorney, Ann B. Harris, Amelia G. Pray, Assistant District Attorneys*, for appellee.