**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

April 26, 2013

# In the Court of Appeals of Georgia

A13A0139. MALLARD v. THE STATE.

MILLER, Judge.

Following a partially stipulated bench trial,[1] Helen Mallard was convicted of one count of methamphetamine possession (OCGA § 16-13-30 (a)). Mallard appeals, following the denial of her motion for new trial, contending that the evidence was insufficient to sustain her conviction. Discerning no error, we affirm.

> On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict. We neither assess the credibility of the witnesses nor weigh the evidence, but instead determine only whether a rational trier of fact could have found each of the elements of the crime proven beyond a reasonable doubt.

---

[1] Mallard stipulated to the chain of custody and crime lab results for the methamphetamine involved in this case. Accordingly, the evidence presented at Mallard's bench trial was limited to the issue of possession of the methamphetamine.

(Citations omitted.) *Stephens v. State*, 271 Ga. App. 634 (610 SE2d 613) (2005).

So viewed, the trial evidence shows that on March 25, 2009, at approximately 9:00 p.m., an officer with the Haralson County sheriff's department was patrolling an area where a rash of burglaries had occurred. The officer observed a vehicle that he considered suspicious because it was backed into the driveway of house, which the officer knew to be vacant, with the headlights and engine turned off. Mallard was sitting in the driver's seat.

While the officer remained in his vehicle and contacted dispatch, Mallard's female passenger exited the parked vehicle and walked toward the officer's patrol car. Mallard exited the driver's side of the vehicle and walked around behind it. Because it was dark, and there were no street lights, the officer turned on the alley lights on his patrol car so he could see who was inside the vehicle. The officer exited his patrol car with his flashlight and walked passed Mallard's passenger to where he could see behind the parked vehicle. Mallard's passenger also moved behind the parked vehicle.

The officer then walked back around the parked vehicle, asked for the women's identification and questioned them about what they were doing in the area and what

was going on. Mallard's passenger stated that she had previously lived at the vacant house and was removing some items from when she had lived there. Mallard's passenger also stated that Mallard had dropped her keys and could not find them.

While the officer was talking to the women, he noticed a clean and dry white plastic film-like canister with a blue lid lying on the wet and muddy ground near the passenger side rear door of the parked car. The canister was beside Mallard's foot.

The officer looked down at the canister, and Mallard attempted to step on it to cover it up. When the officer questioned Mallard about the canister, Mallard picked up the canister and threw it towards the front of the parked vehicle. The officer then retrieved the canister and discovered that it contained methamphetamine.

The officer further questioned Mallard and her passenger about the canister, and both women denied that the canister belonged to either of them. The officer then separated the women and interviewed them individually. Mallard stated that she had no idea what the canister was or where it came from. Mallard also gave no explanation for stepping on the canister or throwing it away. Mallard's passenger, however, stated that the canister belonged to Mallard, she had seen the canister in Mallard's possession earlier that day and she and Mallard had smoked some

methamphetamine out of it. Mallard was charged with and convicted of one count of possession of methamphetamine.

In her sole enumeration of error, Mallard contends that the evidence was insufficient to support her conviction for methamphetamine possession. We disagree.

In Georgia, it is unlawful for any person to possess any controlled substance, and possession of controlled substances may be actual or constructive. Additionally, when a person not in actual possession of a controlled substance knowingly has the power and intention at a given time to exercise control or dominion over the contraband, he or she has constructive possession of same. A finding of constructive possession, then, must be based on a connection between the defendant and the object that is more than spatial proximity. . . . [S]o long as there is slight evidence of access, power, and intention to exercise dominion or control over the contraband, the question of fact as to constructive possession remains with the [trier of fact].

(Citations and punctuation omitted.) *Davenport v. State*, 308 Ga. App. 140, 145 (1) (b) (706 SE2d 757) (2011); see also *Brown v. State*, 314 Ga. App. 212, 213 (2) (723 SE2d 504) (2012).

Here, the State presented evidence other than Mallard's mere spatial proximity to the white canister that contained the methamphetamine to show that she had constructive possession of the drugs. Notably, the evidence showed that the canister

4

was clean and dry, even though the ground was wet and muddy. This evidence supported a finding that the canister containing the methamphetamine had been on the ground for a very short period of time. See *Brown*, supra, 314 Ga. App. at 213 (2); see also *Wright v. State*, 302 Ga. App. 332, 334 (690 SE2d 654) (2010) (holding that jury could infer that bag of drugs had been recently placed in wheel well of car where bag was not dirty, weathered or damp).

The evidence also showed that Mallard had possession of the canister earlier that day, the canister belonged to her, and she and her passenger had smoked methamphetamine from the canister a couple of hours before the officer found it. Moreover, Mallard attempted to step on the canister when the officer looked down at it, and she picked up the canister and threw it away when the officer questioned her about it. Mallard's possession of the canister earlier that day, along with her actions in attempting to conceal the canister and dispose of it, established a meaningful connection between Mallard and the contraband which showed that she actually exercised power and dominion over the drugs and authorized a finding that she had constructive possession of the methamphetamine. See *Wright*, supra, 302 Ga. App. at 334. Accordingly, the trial court sitting as the trier or fact and law was authorized

5

to find that the evidence supported a finding beyond a reasonable doubt that Mallard was guilty of methamphetamine possession.

*Judgment affirmed, Barnes, P. J., and Ray, J., concur.*