**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**April 30, 2013**

# In the Court of Appeals of Georgia

A13A0673. VEGA v. THE STATE.

RAY, Judge.

A jury convicted Jose Vega of trafficking in cocaine in violation of OCGA § 16-13-31 (a) (1).[1] Vega appeals the denial of his amended motion for new trial, contending that the evidence was insufficient to support his conviction. For the reasons that follow, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant is no longer entitled to a presumption of innocence. We neither weigh the evidence nor judge the credibility of the witnesses, but determine only the sufficiency of the

---

[1] Vega was convicted under a prior version of the statute, which was amended at Laws 2012, Act 709, § 3-8, effective July 1, 2012. However, the pertinent language of the version under which he was convicted is identical to that in the amended statute.

evidence in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

(Citation omitted.) *Clark v. State*, __ Ga. App. __ (738 SE2d 704) (2013).

Viewed in the light most favorable to the verdict, the evidence shows that on November 9, 2009, a Georgia State Patrol officer working with a federal agency called High Intensity Drug Trafficking Area was patrolling Interstate 20 when he received a Be On the Lookout ("BOLO") for a gray Volkswagen Passat station wagon traveling eastbound toward Atlanta. After spotting the vehicle, independent of what he had learned from the BOLO, he saw that the vehicle appeared to have a window tint violation. He stopped the vehicle and told Vega, the driver and sole occupant, that he had stopped him for a window tint violation. Vega indicated that he understood, but the officer testified that Vega "was nervous. You could see the artery in his neck pulsing, carotid artery, which is a sign of intense nervousness." The officer asked Vega to step out of his car so they could talk. The officer told Vega he was just going to issue a warning, but Vega's nervousness did not subside. Vega, who had a Texas driver's license, told the officer he was coming to visit his girlfriend in Atlanta for the first time, that he was spending a week there, and that he was driving her car. The officer noticed that the vehicle contained at least four air fresheners; that despite

2

Vega's statement that he was on a week-long visit, he had no luggage; and that there was only a single key in the ignition, rather than a key ring also holding house or apartment keys. When asked about how he got his girlfriend's car and about his lack of luggage, Vega then changed his story and told the officer he already had been at his girlfriend's house for a week, had left his luggage there, and was returning from a trip to Alabama to visit a friend. The officer testified that based on his interdiction training, these factors could be indicators of drug activity. The officer then asked to search Vega's car, and Vega gave his consent orally and also signed a consent to search form. The officer saw that the covers to the seat brackets were scratched and broken, and that the screws fastening the seats to the vehicle frame had abnormal wear, indicating that the seats had been removed multiple times. He also noted that the carpet had been glued to the floorboards in a manner not followed by automobile manufacturers. The search revealed a hidden panel underneath the carpet where the officer found duct-taped packages containing a white powdery substance. After testing, the substance was determined to be 975.76 grams of cocaine with a purity greater than 10 percent.

Vega argues that the evidence was insufficient to sustain his conviction because there was no direct evidence showing he knew that the cocaine was secreted

in the hidden compartment. He contends that a finding of constructive possession may not rest only upon a defendant's spatial proximity to contraband, but that there must be some slight evidence of access, power, and intention to exercise control or dominion over the contraband. See *Feliciano v. State*, 302 Ga. App. 328, 330-331 (690 SE2d 680) (2010). This slight evidence, he argues, was lacking in the instant case. We disagree.

The evidence that Vega was the driver of the car gave rise to a rebuttable presumption that he had possession and control of the cocaine found in the car. *Sabb v. State*, 317 Ga. App. 537, 539 (731 SE2d 399) (2012). In order to rebut this presumption, Vega needed to present evidence that other people had equal access to the vehicle and the contraband. Id.

> [I]f the only evidence of possession of contraband found in an automobile is that the defendant is the driver of the vehicle, and there is evidence of prior use of the vehicle by other parties in the recent past, or equal access to the accessible portions of the vehicle by other parties, then the prior possession or equal access rule would demand an acquittal. However, if there is additional evidence of possession of contraband by the accused – either circumstantial or direct, other than mere use of the vehicle, then an issue is made for the jury.

4

(Citation, footnote and punctuation omitted.) *Pincherli v. State*, 295 Ga. App. 408, 410 (1) (671 SE2d 891) (2008).

Vega presented no evidence at trial. Also, there was additional evidence of Vega's guilt. "A defendant's power to exercise control over the drugs may be inferred from access to the drugs, while the matter of intent may be derived from the surrounding circumstances." (Citation omitted.) *Sabb*, supra at 540. Here, the evidence showed that Vega was the driver of the vehicle. No evidence of recent access by any other person was presented. Further, Vega's demeanor in showing extreme nervousness, "along with [his] inconsistent responses to the officer's inquiries concerning [his] destination . . . reflected [Vega's] consciousness of guilt." (Citation and footnote omitted.) Id. See also *Delavega v. State*, 312 Ga. App. 79, 80 (717 SE2d 681) (2011) (conflicting stories about travel plans, when combined with other evidence, sufficient to create jury issue); *Pincherli*, supra at 411 (1) (evidence of extreme nervousness after being informed of the routine purpose of a traffic stop was a factor sufficient to create a jury issue as to defendant's knowing possession of cocaine); *Allen v. State*, 191 Ga. App. 623, 625 (2) (382 SE2d 690) (1989) (a "[d]efendant's intent to exercise control over the contraband can be inferred by the suspicious and inconsistent explanations defendant gave to the trooper before he

conducted the search"). Also, this Court has considered the fact that a car reeked of air fresheners as evidence sufficient for a jury to infer that such strong odors were intended to hide the smell of cocaine or confuse a drug dog. *Fernandez v. State*, 275 Ga. App. 151, 155 (2) (619 SE2d 821) (2005). Finally, this Court has considered a lack of luggage as a factor in determining whether the evidence was sufficient to support a jury's verdict in a similar case. See *Delavega*, supra at 80.

Based on the presumption that the driver of a vehicle is in constructive possession of the vehicle, the conflicting stories Vega provided about his travel plans, his lack of luggage for a long trip, the presence of multiple air fresheners, and his extreme nervousness, we find sufficient circumstantial evidence to support the jury's verdict beyond a reasonable doubt. Id. A jury could infer that Vega was lying and that his lies evidenced guilty knowledge. Id. While the evidence here is circumstantial, it need not exclude every conceivable inference or hypothesis, but merely those that are reasonable. *Blevins v. State*, 291 Ga. 814, 816 (733 SE2d 744) (2012).

> A reasonable hypothesis is one raised by the evidence. Whether an alternative hypothesis is reasonable is a question committed principally to the jury that heard the evidence, and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will

6

not disturb that finding, unless the verdict of guilty is unsupportable as a matter of law.

(Citation and punctuation omitted.) Id. Accordingly, we conclude that the evidence was sufficient to exclude every reasonable hypothesis other than Vega's guilt and to authorize a rational trier of fact to find him guilty beyond a reasonable doubt.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*