310 Ga. 743
FINAL COPY

S21A0256.  ALLEN v. THE STATE.

MCMILLIAN, Justice.

Alfredo Allen was convicted of malice murder and other related crimes in connection with the stabbing death of Erin McKinney and the aggravated battery of Candice McKinney.[1] He now appeals and

---

[1] The crimes occurred on November 9, 2015. On February 3, 2016, a Gwinnett County grand jury indicted Allen on charges of malice murder of Erin (Count 1), felony murder predicated on aggravated assault of Erin (Count 2), aggravated assault of Erin (Count 3), aggravated assault of Candice (Count 4), aggravated battery of Candice (Count 5), possession of a firearm or knife during the commission of a felony based on aggravated assault (Count 6), three counts of cruelty to children in the third degree based on felony murder (Counts 7-9), and three counts of cruelty to children in the third degree based on aggravated assault (Counts 10-12). At a trial held from October 16 to October 23, 2017, the jury found Allen guilty of Counts 1-6 and acquitted him of Counts 7-12. The trial court sentenced Allen to serve life in prison without the possibility of parole for malice murder (Count 1), twenty years for aggravated battery (Count 5), and five years for possession of a firearm or knife during the commission of a felony (Count 6), with the sentences to run consecutively. Count 3 merged into Count 1, and Count 4 merged into Count 5. Although the trial court purported to merge Count 2 into Count 1, the felony murder count was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-72 (4) (434 SE2d 479) (1993). Allen filed a motion for new trial on October 24, 2017. Following a hearing in October 2019, the trial court denied the motion for new trial on October 23, 2019. Allen timely appealed, and the case was docketed to this Court's term beginning in December 2020 and thereafter submitted for a decision on the briefs.

challenges the sufficiency of the evidence as to his convictions for malice murder and felony murder. For the reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdict, the evidence showed that Allen and Candice began dating in 2012 and had a child together in 2013. They lived together in an apartment in Gwinnett County with their child and Candice's child from a previous relationship. Candice testified that her relationship with Allen began to deteriorate because Allen continually accused her of cheating on him. Allen also became physically violent, and Candice called the police several times during their fights before eventually ending the relationship in 2014. However, Allen continued to pursue a relationship with Candice and stayed at her apartment from time to time. In September 2015, Candice's sister, Erin, and Erin's two-year-old son moved in with Candice and her two children. In October 2015, Allen became enraged during a fight and threatened to kill Candice. On November 8, 2015, Candice told Allen that he would have to go to a shelter if he had nowhere else to go. Allen said that

he understood, and Candice agreed to let him stay one last night before going to the shelter the following day.

Candice went to bed around 1:30 on the morning of November 9 and was in a deep sleep when Allen finally arrived at her apartment. After letting Allen inside, Candice told him she did not want to talk because she had to go to work in the morning and went back to sleep. She was awoken by the sound of Erin crying and calling her name. When Candice went to her bedroom door, Erin ran into her arms, covered in blood. Candice saw Allen stabbing Erin as Erin ran. Candice tried to shield Erin with her body, but Allen then stabbed both of them. Candice fought with Allen until he eventually let go of the knife. Candice grabbed the knife, which was one of the largest knives from a set in her kitchen, and ran outside to find help until she collapsed from her injuries.

Gwinnett County Police Department officers responded to a person-stabbed call and located Candice in an outside stairwell. She had multiple stab wounds, and officers administered first aid until

EMS arrived.[2] Candice indicated that her sister and children were still in the apartment, and officers found three young children in a locked bedroom where Erin was covered by a blood-soaked blanket. Erin appeared to have multiple traumatic wounds, and EMS determined on scene that she had no signs of life. The State's medical examiner testified that Erin received 15 stab wounds over her upper body and head. The most rapidly fatal wound fractured her fourth rib on the right side and cut into the middle lobe of her right lung. Erin also had multiple defensive wounds on her arms and hands. The wounds were consistent with having been inflicted by the knife that officers recovered at the scene.

Officers apprehended Allen as he was driving away from the apartment, and he later agreed to be interviewed after waiving his rights under *Miranda*.[3] During the recorded interview, which was played for the jury at trial, Allen stated that he was arguing with

---

[2] A trauma surgeon testified that Candice suffered six lacerations that required suturing in addition to other injuries.

[3] See *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

Erin because he thought that Erin was instigating problems between Candice and him. He became so angry, he "just lost it" and picked up a knife and went into Erin's bedroom and stabbed her. He never claimed that Erin had attacked him first or started the argument with him. The only injury identified on Allen was a small cut on his right pinky finger.

Allen testified in his own defense at trial and gave a different version of events. He explained that he became upset on the afternoon before the stabbing when he learned that Candice had purchased a new phone. So when he went to her apartment late that night, he was already angry, even though they were not fighting at the time. He stayed in Candice's bed for about an hour while she slept before he decided to get up and make his lunch for work the next day. When Erin walked out of her bedroom, he accused her of hiding things for Candice and told her that he would not help her with her son anymore. Erin told him she did not want to "hear that sh*t" and that he deserved to have Candice cheat on him with another man. At that point, Allen became "tense" and called Erin a

5

"b*tch." Erin said, "Who are you calling a b*tch?" and hit him in the face. He pushed Erin against the wall, but she continued hitting him and spat on him. Allen stated that "at that moment we started to struggle and the knife appeared." He did not remember getting the knife, and once he realized that he had stabbed Erin, he panicked and tried to run out the front door. Candice stopped him, however, and Erin came after him, still hitting him. He did not recall stabbing Candice.

Allen asserts that the evidence was insufficient to support his convictions for malice murder and felony murder because he and Erin had never had any altercations before Erin punched and spat on him that morning.[4] Thus, Allen argues, the evidence showed that he acted in a sudden fit of passion rather than with the criminal

---

[4] Allen does not challenge the sufficiency of the evidence to support his convictions for the aggravated battery of Candice or possession of a knife during the commission of a felony. Because this case was docketed to the term beginning in December 2020, we no longer review the sufficiency of the evidence sua sponte in non-death penalty cases, see *Davenport v. State*, 309 Ga. 385, 399 (4) (846 SE2d 83) (2020), and we decline to exercise our discretion to review the sufficiency of these convictions.

intent to commit assault or murder and was therefore guilty only of the lesser offense of voluntary manslaughter.[5]

When evaluating the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (emphasis omitted). On appeal, "this Court does not reweigh the evidence or resolve conflicting testimony." *Mosby v. State*, 300 Ga. 450, 452 (1) (796 SE2d 277) (2017).

---

[5] OCGA § 16-5-2 (a) provides:

A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

We first note that because the felony murder count was vacated by operation of law, it is not necessary for us to consider whether the evidence was sufficient to support that count. See *Anderson v. State*, 299 Ga. 193, 196 (1) n.4 (787 SE2d 202) (2016); OCGA § 16-1-3 (4). Turning to Allen's malice murder conviction, OCGA § 16-5-1 (a) provides that "[a] person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." Express malice is defined as "that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof." OCGA § 16-5-1 (b). And "[m]alice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart." Id. Contrary to Allen's assertions, "[t]here is no requirement of premeditation or a preconceived intention to kill; malice aforethought can be formed instantly." *McGuire v. State*, 307 Ga. 500, 504 (837 SE2d 339) (2019) (citation and punctuation omitted). See also *Benton v. State*, 305 Ga. 242, 244 (1) (a) (824 SE2d 322)

8

(2019) ("The malice necessary to establish malice murder may be formed in an instant, as long as it is present at the time of the killing.").

Here, the trial court charged the jury on voluntary manslaughter as a lesser offense of malice murder, and it was within the province of the jury to determine, from all the facts and circumstances, whether the killing was intentional and malicious or whether there was such a serious provocation as would be sufficient to excite a sudden, violent, and irresistible passion in a reasonable person, thus reducing the crime to voluntary manslaughter.[6] See *McGuire*, 307 Ga. at 504; OCGA § 16-5-2 (a). Despite Allen's claims that Erin punched him and continued to hit him, a responding officer testified that he saw no injuries on Allen other than a small cut on his finger. Moreover, the jury also heard the version of events Allen provided to investigators shortly after the killing, in which he admitted arguing with Erin, picking up a knife, and walking to

---

[6] Because neither party has raised the issue, we express no opinion on whether the evidence required the trial court to give a voluntary manslaughter instruction.

9

Erin's room to stab her. Candice also testified that Allen continued to chase and stab Erin as Erin attempted to escape from him. The jury was authorized, after assessing the weight and credibility of the evidence presented, to find Allen guilty of malice murder. See *Cooper v. State*, 306 Ga. 547, 549 (832 SE2d 382) (2019) (evidence sufficient to convict defendant of malice murder where defendant, during a heated argument, deliberately plunged the blade of a large kitchen knife into the victim's chest); *Hornbuckle v. State*, 300 Ga. 750, 751-52 (1) (797 SE2d 113) (2017) (evidence sufficient to sustain defendant's malice murder conviction, despite defendant's testimony that the victim attacked her first, where evidence otherwise showed the victim had defensive knife wounds in addition to a fatal chest wound and that defendant had no injuries except bruises on her right arm).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 1, 2021.

Murder. Gwinnett Superior Court. Before Judge Cook, Senior Judge.

*Angela Dillon*, for appellant.

*Daniel J. Porter, District Attorney, Samuel R. d'Entremont, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, Christopher M. DeNeve, Assistant Solicitor-General*, for appellee.