**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 25, 2021**

# In the Court of Appeals of Georgia

A21A0351. HILL v. THE STATE.

BROWN, Judge.

Gilbert Alexander Hill appeals from his convictions of trafficking heroin, trafficking fentanyl, possession of heroin with the intent to distribute, possession of benzodiazepine, possession of marijuana, and possession of a firearm by a convicted felon. Hill contends that insufficient evidence supports his convictions because he was merely present in the location where the drugs and guns were found and the evidence failed to exclude every other reasonable hypothesis except that of his guilt. For the reasons set forth below, we agree and reverse.[1]

---

[1] We have circulated this decision among all nondisqualified judges of the Court to consider whether this case should be passed upon by all members of the Court. Fewer than the required number of judges, however, voted in favor of a hearing en banc on the question of disapproving the cases listed in footnote 4 of this opinion.

On appeal from a criminal conviction, the standard for reviewing the sufficiency of the evidence

> is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. . . . This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.

(Citations and punctuation omitted.) *Hayes v. State*, 292 Ga. 506 (739 SE2d 313) (2013). So viewed, the evidence shows that law enforcement officers lawfully searched a mobile home in connection with "an investigation [into] illicit narcotics that involved" the home.[2] When the officers arrived around 10:00 a.m., they knocked repeatedly for several minutes at different locations, which included the front door, back door, and windows, while announcing themselves as sheriff's deputies or MANS ("Multi Agency Narcotics Squad") agents in a normal tone of voice that progressed to yelling after no one came to the door. After seeing no movement in the home and receiving no response to their knocks and announcements, the officers went to "a neighboring . . . home," knocked on the door, and located Brittany Grizzle, who

---

[2] Although not submitted for the jury's consideration, the record shows that both Hill and his co-defendant, Brittany Grizzle, had executed Fourth Amendment waivers before the search in question.

2

was in a back bedroom with an unidentified male. The officers obtained from Grizzle a key to the front door of the mobile home that they sought to search; the key was located on the night stand in the bedroom where they found Grizzle.

When the officers entered the mobile home using the key that opened the front door, they continuously identified themselves and found no one after conducting an "initial clear" of the home. The officers then began a "deep clear," which involved looking in cabinets and underneath beds. During this clearing process, three to four officers were constantly and loudly announcing, "Police, come out, show me your hands." The deep clear revealed Hill hiding fully clothed behind a shower curtain in the bathroom shower. It did not appear that he was preparing to take a shower. A search of Hill's person revealed "nothing."

During their search of the mobile home, the officers discovered that it had two bedrooms, only one of which had a bed; this room had men's clothing in the closet. The other room had no bed and women's clothing in the closet. Underneath the kitchen sink, the officers found a bag containing a dark gray substance that was a mixture of heroin and fentanyl, as well as two handguns. Hill's license was "[o]n top of the kitchen sink." Black tar heroin was found in the freezer. Digital scales, commonly used to measure small amounts of narcotics to sell, along with Grizzle's

3

identification card and birth certificate, were on the kitchen table. A digital scale was also located on the kitchen stove. In the kitchen pantry, officers found less than an ounce of marijuana, several pills, "little baggies," and small pieces of tinfoil used for packaging, popular with heroin dealers and users. Officers testified that the quantity of drugs found, in conjunction with the scales and packaging materials, indicated "[h]eroin sales." The value of the heroin found in the home was approximately $26,000. The State presented evidence that a dealer would typically keep a large quantity of drugs like the amount found in this case on his or her person or "close by" so another dealer or user could not steal it; it would not be left unattended.

A sheriff's department investigator testified that law enforcement did not know who owned the home where the search took place or who might have been renting it; the State presented no evidence regarding who owned or rented the home. Law enforcement also did not establish that the clothing in the closet belonged to Hill, and the State presented no photos or video of items found during their search. The firearms were not registered to Hill, and the officers did not attempt to lift fingerprints in the home, from the guns, or the digital scales. Over the objection of Hill's counsel, a sheriff's investigator testified that law enforcement went to the home on the day of

the search with the intent to find Hill and Grizzle there.[3] Another officer testified that the police did not conduct any surveillance on the mobile home before arriving to execute the search.

Hill contends that we should reverse his convictions because the State's circumstantial evidence fails to exclude every reasonable hypothesis except that of his guilt. As a starting point for our analysis, we begin with a discussion of possession.

> [P]ossession of contraband may be joint or exclusive, and actual or constructive. Actual possession means knowing, direct physical control over something at a given time. For constructive possession, the standard is also well-understood: if a person has both the "power and the intention at a given time to exercise dominion or control" over a thing,

---

[3] Trial counsel raised a hearsay objection and asserted that the evidence was "highly prejudicial." After the witness was questioned outside the presence of the jury, counsel again objected because "it is double hearsay. He got information that why they were going there is because the other investigator told him he heard from some source somehow, somewhere that Mr. Hill and Ms. Grizzle might be there or would be there." The trial court ruled that it was not "hearsay because that's what the officer was intending to do. . . . So I believe that's permissible to ask who he intended to encounter there and did he encounter those folks there and not go into why he thought they were there or what information he had to think they were there. Just that that was his intention . . . to encounter them and he did."

then the person is in constructive possession of that thing.[4] Mere

---

[4] We note that, beginning in 2007, this Court has stated in numerous sufficiency of the evidence cases involving criminal convictions that: "As long as there is slight evidence of access, power, and intention to exercise control or dominion over an instrumentality, the question regarding constructive possession remains within the domain of the trier of fact." *Daugherty v. State*, 283 Ga. App. 664, 667-668 (1) (b) (642 SE2d 345) (2007). This statement originates from *Evans v. State*, 185 Ga. App. 805 (366 SE2d 165) (1988), a probation revocation case applying the former slight evidence standard for revocation of probation. Id. ("There being what can at the least be termed slight evidence of access, power, and intention to exercise control or dominion over the cocaine in the house, the question of fact regarding constructive possession remains within the domain of the trier of fact."). See also *Glenn v. State*, 310 Ga. 11, n.1 (849 SE2d 409) (2020) (explaining statutory basis for change in standard from slight evidence to preponderance of the evidence in probation revocation cases). In *Wright v. State*, 279 Ga. App. 299 (630 SE2d 774) (2006), a probation revocation case applying the preponderance of the evidence standard, we cited *Evans*, in part, to create the statement now used repeatedly in cases involving criminal convictions: "As long as there is 'slight evidence of access, power, and intention to exercise control or dominion' over an instrumentality, 'the question of fact regarding constructive possession remains within the domain of the trier of fact.'" *Wright*, 279 Ga. App. at 299 (1).

At the time this Court applied the former slight evidence standard for probation revocation, we recognized: "Only slight evidence is necessary to sustain a revocation of probation, and it need not be of such quality or quantity as would be necessary to sustain a conviction of a crime." *Williams v. State*, 166 Ga. App. 798, 800 (3) (305 SE2d 489) (1983); *Smith v. State*, 169 Ga. App. 799 (315 SE2d 32) (1984). Our perpetuation of the slight evidence quote from *Wright*, supra, in cases involving criminal convictions is improper, particularly in light of the Supreme Court of Georgia's decision to overrule the former slight evidence rule with regard to venue in criminal cases. See *Jones v. State*, 272 Ga. 900, 902-903 (2) (537 SE2d 80) (2000), overruled on other grounds, *Worthen v. State*, 304 Ga. 862 (3) (e), n.8 (823 SE2d 291) (2019). As it later reiterated, an "any evidence" standard of review for venue in a criminal case is also inappropriate because the proper standard for reviewing the sufficiency of the evidence is the well-established standard found in *Jackson v.*

*Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). *Martin v. McLaughlin*, 298 Ga. 44, 46, n.3 (779 SE2d 294) (2015). When reviewing a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and punctuation omitted.) *Allen v. State*, 310 Ga. 743, 746 (854 SE2d 513) (2021). We therefore disapprove the following cases as they state an improper standard with regard to slight evidence of constructive possession: *Grullon v. State*, 357 Ga. App. 695, 697 (1) (849 SE2d 291) (2020); *Riley v. State*, 356 Ga. App. 290, 298 (4) (846 SE2d 617) (2020); *Brown v. State*, 355 Ga. App. 308, 310 (1) (a), n.11 (844 SE2d 182) (2020); *Jones v. State*, 350 Ga. App. 618, 621 (1) (829 SE2d 820) (2019); *Burgess v. State*, 349 Ga. App. 635, 637 (1) (824 SE2d 99) (2019); *Wooten v. State*, 348 Ga. App. 408, 411-412 (1) (823 SE2d 98) (2019); *Partlow v. State*, 346 Ga. App. 473, 480 (3) (816 SE2d 474) (2018); *Duncan v. State*, 346 Ga. App. 777, 781 (1) (815 SE2d 294) (2018); *Winn v. State*, 345 Ga. App. 359, 362 (1) (813 SE2d 400) (2018); *Harvey v. State*, 344 Ga. App. 7, 12 (2) (b) (806 SE2d 302) (2017) (physical precedent only on other grounds); *McCants v. State*, 338 Ga. App. 733, 737 (791 SE2d 611) (2016); *Anderson v. State*, 338 Ga. App. 171, 176 (5) (789 SE2d 363) (2016); *Crider v. State*, 336 Ga. App. 83, 88 (2) (783 SE2d 682) (2016); *Mantooth v. State*, 335 Ga. App. 734, 736 (1) (a) (783 SE2d 133) (2016); *Smith v. State*, 331 Ga. App. 296, 298 (1), n.6 (771 SE2d 8) (2015); *New v. State*, 327 Ga. App. 87, 93 (1) (755 SE2d 568) (2014); *Garcia-Maldonado v. State*, 324 Ga. App. 518, 520 (751 SE2d 149) (2013); *State v. Al-Khayyal*, 322 Ga. App. 718, 722 (744 SE2d 885) (2013); *Kirchner v. State*, 322 Ga. App. 275, 282 (1) (c) (744 SE2d 802) (2013); *Vega v. State*, 321 Ga. App. 682, 683 (742 SE2d 499) (2013); *Mallard v. State*, 321 Ga. App. 650, 651-652 (742 SE2d 164) (2013); *Clark v. State*, 319 Ga. App. 880, 883 (738 SE2d 704) (2013), overruled on other grounds, *Maddox v. State*, 322 Ga. App. 811, 815 (2) (746 SE2d 280) (2013); *Garcia v. State*, 319 Ga. App. 751, 755 (1) (a) (738 SE2d 333) (2013); *Evans v. State*, 318 Ga. App. 706, 711 (2) (734 SE2d 527) (2012); *Sabb v. State*, 317 Ga. App. 537, 540 (731 SE2d 399) (2012); *Stokes v. State*, 317 Ga. App. 435, 437 (1) (731 SE2d 118) (2012); *Smith v. State*, 316 Ga. App. 175, 178 (1) (728 SE2d 808) (2012); *Smoot v. State*, 316 Ga. App. 102, 113 (6) (729 SE2d 416) (2012); *Ferrell v. State*, 312 Ga. App. 122, 124 (1) (717 SE2d 705) (2011); *Bone v. State*, 311 Ga. App. 390, 393 (2) (715 SE2d 789) (2011); *Mask v. State*, 309 Ga. App. 761, 764 (2) (711

proximity to contraband, absent other evidence connecting a suspect with that contraband, is not enough to establish constructive possession. If one person alone has actual or constructive possession of a thing, then the person is in sole possession of it. If two or more people share actual or constructive possession of a thing, then their possession is joint.

(Citations and punctuation omitted.) *Lebis v. State*, 302 Ga. 750, 753-754 (II) (808 SE2d 724) (2017).

As the State presented no evidence showing actual possession by Hill, we must determine whether it presented sufficient evidence of constructive possession.

---

SE2d 348) (2011); *Davenport v. State*, 308 Ga. App. 140, 145 (1) (b) (706 SE2d 757) (2011); *Wheeler v. State*, 307 Ga. App. 585, 586 (1) (705 SE2d 686) (2011), overruled on other grounds, *Maddox*, 322 Ga. App. at 815 (2); *Lott v. State*, 303 Ga. App. 775, 779 (1) (694 SE2d 698) (2010); *Hunt v. State*, 303 Ga. App. 855, 858 (2) (695 SE2d 53) (2010); *Feliciano v. State*, 302 Ga. App. 328, 330-331 (690 SE2d 680) (2010); *Marshall v. State*, 295 Ga. App. 354, 355 (671 SE2d 860) (2008); *Bailey v. State*, 294 Ga. App. 437, 440 (1) (669 SE2d 453) (2008); *Prather v. State*, 293 Ga. App. 312, 313-314 (1) (667 SE2d 113) (2008); *Woodard v. State*, 289 Ga. App. 643, 651 (2) (658 SE2d 129) (2008) (physical precedent only); *Warren v. State*, 289 Ga. App. 481, 484 (3) (657 SE2d 533) (2008), impliedly overruled on other grounds, *Coates v. State*, 304 Ga. 329, 332 (818 SE2d 622) (2018); *Jackson v. State*, 284 Ga. App. 619, 620 (1) (644 SE2d 491) (2007); *Daugherty v. State*, 283 Ga. App. 664, 667-668 (1) (b) (642 SE2d 345) (2007).

We have attempted to identify all cases using the improper standard; any cases not listed that also use the improper standard are hereby disapproved. While not directly before us in this case, we also question the continued validity of the slight evidence statement in *Wright*, supra, in probation revocation cases. See *Glenn*, 310 Ga. at 11, n.1.

Constructive possession can be proven—and very often is proven—by circumstantial evidence. Of course, as with any charge based on purely circumstantial evidence, in order to support a conviction "the evidence must exclude every reasonable hypothesis, save that of constructive possession by the defendant." As we have noted, proximity to contraband is plainly not enough. But as this Court has also held, consistent with OCGA § 24-14-6,[5] "questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and . . . that finding will not be disturbed unless the verdict of guilty is unsupportable as a matter of law." In other words, whether the evidence shows something more than mere presence or proximity, and whether it excludes every other reasonable hypothesis, are questions committed principally to the trier of fact, and we should not disturb the decisions of the trier of fact about these things unless they cannot be supported as a matter of law.

(Citations and punctuation omitted.) *Lebis*, 302 Ga at 754 (II). As the Supreme Court of Georgia has explained,

[t]his of necessity is so, for we have no legal yardstick by which we can ordinarily determine what in a given case is a reasonable hypothesis, save the opinion of twelve upright and intelligent jurors. After having heard the witnesses and having observed them testify, they are more

---

[5] This Code section provides: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."

9

capable of judging the reasonableness of a hypothesis produced by the evidence, or the lack of evidence, and the defendant's statement, than is a court of law.

(Citation and punctuation omitted.) *Harris v. State*, 236 Ga. 242, 244-245 (1) (223 SE2d 643) (1976).

On the other hand,

[w]hen the circumstantial evidence supports more than one theory, one consistent with guilt and another with innocence, it does not exclude every other reasonable hypothesis except guilt and is not sufficient to prove the defendant's guilt beyond a reasonable doubt. Circumstantial evidence is worth nothing in a criminal case, if the circumstances are reasonably consistent with the hypothesis of innocence, as well as the hypothesis of guilt.

(Citation and punctuation omitted.) *O'Neil v. State*, 285 Ga. 125 (674 SE2d 302) (2009). See also *Roberts v. State*, 296 Ga. 719, 721-722 (1) (770 SE2d 589) (2015). Finally, the evidence "need not exclude every *conceivable* inference or hypothesis — only those that are reasonable." (Emphasis in original.) *Merritt v. State*, 285 Ga. 778, 779 (1) (683 SE2d 855) (2009).

The circumstantial evidence presented by the State against Hill includes: his conduct in refusing to come to the door and hiding for an extended period of time

after the police entered the home and repeatedly announced themselves, his driver's license on top of the kitchen sink, the presence of two digital scales in plain view in the kitchen, and the value of the drugs in the home making it unlikely for them to be left unattended. We must therefore determine whether this evidence was sufficient to show that he "knowingly had both the power and intention at a given time to exercise control over the [drugs and guns]." (Citation and punctuation omitted.) *Kier v. State*, 292 Ga. App. 208, 209 (1) (663 SE2d 832) (2008). With regard to power, that may be inferred from his ability to access the drugs and guns while in the house. Id. See also *Maddox v. State*, 322 Ga. App. 811, 813 (1) (746 SE2d 280) (2013). The intent to exercise control over the drugs and guns "may be derived from the surrounding circumstances" such as

> a defendant's attempts to flee or elude police; inconsistent explanations by the defendant for [his] behavior; the presence of significant amounts of contraband and drug paraphernalia in plain view; the defendant's possession of large amounts of cash, other indicia of the sale of drugs, or drug-related paraphernalia; evidence that the defendant was under the influence of drugs; or drug residue found on the defendant.

*Kier*, 292 Ga. App. at 210 (1). We have previously held that hiding from police inside a home "constitute[s] evidence of [a defendant]'s consciousness of guilt and of his

11

intention to exercise control over the contraband."[6] *Moody v. State*, 232 Ga. App. 499, 502 (1) (502 SE2d 323) (1998). See also *Duncan v. State*,[7] 346 Ga. App. 777, 781 (1) (815 SE2d 294) (2018) (defendant's behavior in refusing to answer door for about 20 minutes after police officers knocked and repeatedly announced their presence evinced a connection between the defendant and the illegal contraband); *Johnson v. State*, 338 Ga. App. 500, 503-504 (790 SE2d 291) (2016) (finding sufficient evidence to support constructive possession of large quantity of cocaine found in house based in part upon defendant's flight upon arrival of police). Likewise, we have looked to the high street value of drugs to show a connection between a person and hidden drugs. See *Arellano v. State*, 289 Ga. App. 148, 150 (1) (a) (656 SE2d 264) (2008). Compare *Cobarrubias-Garcia v. State*, 316 Ga. App. 787, 791 (730 SE2d 455) (2012) (physical precedent only) (finding insufficient evidence of constructive

---

[6] We have also concluded that a driver's attempt to elude police provides evidence from which a jury can infer that a defendant knowingly possessed drugs hidden in the car. See *Hernandez-Garcia v. State*, 322 Ga. App. 455, 462 (3) (745 SE2d 706) (2013); *Arellano v. State*, 289 Ga. App. 148, 150 (1) (a) (656 SE2d 264) (2008).

[7] While this case is disapproved in footnote 4 of this opinion for stating an improper slight evidence standard regarding constructive possession, the portion of the opinion related to the inference that can be drawn from the defendant's behavior is not impacted by that disapproval.

possession despite State's argument that "'no one is in a stash house containing drugs worth $750,000 at 10:30 p.m. unless they have a vested interest in what is inside'").

On the other hand, we have concluded that insufficient evidence supported a trafficking conviction when the State presented the following evidence: the defendant did not own or lease the home, had previously opened the door to the home while holding a black bag; a black bag containing 443.77 grams of methamphetamine was found inside a drawer; items used to manufacture methamphetamine were found in the basement; the basement had a noticeable odor of acetone, a substance used in the manufacture of crystal methamphetamine; a key to the home was found on the defendant's person; his driver's license, which listed a different address, was found in a bedroom on the main floor of the home, and identifications were found in the house in several other peoples' names. *Aquino v. State* 308 Ga. App. 163, 167 (706 SE2d 746) (2011). Similarly, we have found insufficient evidence to sustain a trafficking conviction when the defendant was found inside a home that he did not own or lease, no drugs were found on his person, and he was not seen in proximity to the well-hidden drugs. *Cobarrubias-Garcia*, 316 Ga. App. at 791. See also *Holland v. State*, 334 Ga. App. 600, 604 (1) (780 SE2d 40) (2015) (physical precedent only) (finding insufficient evidence to sustain drug convictions where drugs were hidden

13

in master bedroom and attic, defendant did not own or rent the home, and there was no evidence that defendant occupied master bedroom or kept belongings there). None of these cases, however, involved a defendant hiding from the police inside the home, both before and after a well-announced entry to search.

In *Blue v. State*, 350 Ga. App. 702 (830 SE2d 279) (2019), we concluded that insufficient evidence supported the defendant's convictions of trafficking in cocaine and possession of a firearm during the commission of a crime. Id. at 706-707 (1). In that case, the State presented evidence that a confidential informant, who did not testify at trial, met the defendant on the front porch of his girlfriend's house and entered the home with him. Id. at 702. Four or five minutes later, both men exited the rear of the house and went in separate directions. Id. The informant then gave the police cocaine he allegedly purchased. Id. The police obtained a search warrant for the house which they executed between one and three days after the confidential informant went to the home. Id. at 703. Although the defendant was not present when the police arrived, his girlfriend said he had just left. Id. The police found a large quantity of cocaine hidden in a bedroom (inside a purse in the closet, inside a shoe box in a corner of the bedroom, and inside a make-up drawer on the nightstand), a gun sitting on top of the nightstand, three digital scales in the kitchen (one on the

14

counter with cocaine residue, one in a drawer, and one inside a cabinet). Id. The defendant was arrested three days later for an outstanding warrant while he was inside the house, and police found a key to the house and $1,332 cash on his person. Id. at 703, 706 (1) (a). He admitted that he sometimes stayed in the house with his girlfriend and that men's clothing in the house belonged to him. Id. at 703. Evidence was presented showing that the defendant was given a key to the house after his girlfriend's arrest to retrieve clothing for her children, that he was employed, that he did not own or lease his girlfriend's house, and that he had a bedroom with clothing at his mother's house. Id. at 704. After reviewing this evidence, we concluded that "[t]he State's evidence did not show essential links between [the defendant] and the drug trafficking charge" and reversed his conviction. Id. at 706 (1) (a).

In this case, the State presented far less evidence of a link between Hill and the drugs and guns found in the home than that presented in *Blue*. Having carefully considered the inferences which can be drawn from the circumstantial evidence and our existing case law, we conclude that the State failed to present sufficient evidence of Hill's guilt under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See *Blue*, 350 Ga. App. at 706 (1) (a); *Aquino*, 308 Ga. App. at 167-168 (1). "There may have existed unexplained and suspicious circumstances,

15

but they are not sufficient to convict." *Russell v. State*, 132 Ga. App. 35 (207 SE2d 619) (1974).

*Judgment reversed. Doyle, P. J., and Reese, J., concur*.