**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 26, 2022**

# In the Court of Appeals of Georgia

A22A0652. BUSTOS v. THE STATE.
A22A0898. PORTILLO v. THE STATE.

GOBEIL, JUDGE.

In these companion cases, codefendants Gustavo Bustos and Rogelio Garcia Portillo appeal from the trial court's denial of their motions for new trial. A jury found both Bustos and Portillo guilty of trafficking methamphetamine and possession of methamphetamine with intent to distribute, and the trial court sentenced them to 30 years each. On appeal, both men argue that there was insufficient evidence to support their convictions. Portillo further contends that he received ineffective assistance from trial counsel. We conclude that there is sufficient evidence to support Bustos's convictions but insufficient evidence to support Portillo's convictions.

Accordingly, in Case No. A22A0652, we affirm Bustos's convictions and sentence. In Case No. A22A0898, we reverse Portillo's convictions.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that law enforcement officers learned through wiretaps conducted as part of an ongoing investigation, that on April 13, 2016, Cesar Gonzalez would be receiving a large delivery of methamphetamine at Tramore Park in Cobb County. The officers established surveillance and observed as Gonzalez arrived at the location in a black Mercedes. Through intercepted communication, officers had learned that the drugs would be delivered to Gonzalez by a courier in a blue Honda, and they saw a blue Honda arrive at the park. The officers watched as the driver of the Mercedes walked up to the blue Honda and took a bright blue bag from the Honda's driver. The driver of the Mercedes returned to his vehicle, and the cars then exited the park and drove away in separate directions. Officers followed the Mercedes and executed a traffic stop; a search of the car revealed ten kilograms of methamphetamine. Other officers followed the blue Honda in an effort to determine where the drugs had originated. The Honda drove to a house at 1981 Winchester Court.

---

[1] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2

Appellant Portillo subsequently arrived at the Winchester Court home in a BMW owned by Luis Bustos ("Luis"). During the 30 to 45 minutes the officers watched the residence, they saw four men outside the home. One of the men, Jorge Quintero, stayed near the curb. The other three men – Portillo, Bustos, and Luis – went in and out of the basement. When outside, the men repeatedly looked up and down the road and appeared to be nervous, and officers suspected they were performing counter-surveillance. Officers detained the four men after they began walking toward the Honda and BMW as if they were about to leave.

Upon approaching the home, officers noticed a strong smell of acetone, consistent with methamphetamine processing, and saw drugs in plain view inside the basement residence. They obtained a search warrant, then entered the basement apartment and found a "conversion laboratory." On the stove in the kitchenette, there was a very large stock pot holding what was later confirmed to be methamphetamine suspended in a liquid. In the living area, there were several containers holding finished crystal methamphetamine. There were also digital scales in the kitchen area and a roll of packaging material in a closet. In a back room of the apartment, officers found identification documents for Quintero and another individual. Overall, officers located and seized 14 kilograms of methamphetamine in the home. No money or guns

were recovered from the residence, and an officer explained that this was not unusual because it is common for drug organizations to compartmentalize their members into different tasks so that each member is in contact with very few other people. The officer further testified that, in his experience, only individuals associated with the organization would be permitted to come to a "stash house" location like the basement residence. Officers did not seize the defendants' phones when they detained the men because, as one officer testified, they decided to devote their resources to higher level targets.

Appellants Portillo and Bustos, along with Luis, Quintero, Gonzalez, and another individual, were each charged with trafficking methamphetamine (OCGA § 16-13-31 (e)), and possession of methamphetamine with intent to distribute (OCGA § 16-13-30 (b)). Portillo, Bustos, and Luis were codefendants at a joint jury trial.

During the trial, officers testified that they saw appellants Portillo and Bustos enter and exit the Winchester Court basement apartment, although officers could not testify specifically about which men went into the house at what point or for how long. When the men were arrested, Portillo was walking toward the BMW and Bustos was walking toward the Honda, and the keys to the Honda were recovered from Bustos's pocket. Bustos initially told officers that he lived at the Winchester Court

4

residence, but he later stated that he lived at a hotel. Portillo, however, told officers that he lived in Marietta.

The man who lived upstairs at 1981 Winchester Court testified that he leased the downstairs apartment where the contraband was found to Luis approximately three months before the arrests. After a few weeks, Luis brought appellant Bustos to the residence, and Bustos began to spend a lot of time in the basement, arriving at the apartment in a blue Honda. The man who lived upstairs also observed Quintero at the house on a few occasions, but never saw Portillo there.

The State presented evidence that Portillo was previously convicted of trafficking heroin in Douglas County. An officer testified that in March 2012, he arrested Portillo at a traffic checkpoint. When Portillo stopped at the checkpoint, there was a marijuana bong in plain view in his car. A pat down then revealed that Portillo had in his pockets several plastic bags containing 14 grams of heroin and a small amount of marijuana. Portillo told officers that he was delivering the heroin, but he did not tell them where he had picked it up or where he was taking it.

The jury found all three codefendants guilty of both offenses, and the trial court determined that count 2 merged into count 1 for purposes of sentencing. The court then sentenced each defendant to thirty years, clarifying that Portillo's sentence

would run consecutive to the Douglas County sentence he was serving. The appellants filed motions for new trial, as amended, which the trial court denied following a hearing. Bustos and Portillo then filed these appeals.

*A22A0652. Bustos v. The State.*

1. Bustos argues that the State failed to present sufficient evidence to establish that he had constructive possession of the methamphetamine. He emphasizes that he was not named on the lease for the basement apartment where the drugs were recovered and there were no documents found inside the residence to connect him to it. He also argues that the case against him is solely based on circumstantial evidence. We conclude that there was sufficient evidence to support the jury's conclusion that Bustos was in constructive possession of the methamphetamine.

Under Georgia law, possession can be either actual or constructive. See *Reyes v. State*, 322 Ga. App. 496, 497 (1) (745 SE2d 738) (2013). A person has actual possession of an object "if he knowingly has direct physical control of it at a given time." Id. (citation and punctuation omitted). Constructive possession results when "[a] person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing." Id. (citation and punctuation omitted).

6

Constructive possession may be proven by circumstantial evidence but, "as with any charge based on purely circumstantial evidence, in order to support a conviction, the evidence must exclude every reasonable hypothesis, save that of constructive possession by the defendant." *Lee v. State*, 362 Ga. App. 171, 173 (1) (867 SE2d 303) (2021) (citation and punctuation omitted). As the Supreme Court has held,

> questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and that finding will not be disturbed unless the verdict of guilty is unsupportable as a matter of law. In other words, whether the evidence shows something more than mere presence or proximity, and whether it excludes every other reasonable hypothesis, are questions committed principally to the trier of fact, and we should not disturb the decisions of the trier of fact about these things unless they cannot be supported as a matter of law.

*Lebis v. State*, 302 Ga. 750, 754 (II) (808 SE2d 724) (2017) (citations and punctuation omitted).

> It is true mere presence at the scene of a crime, even coupled with knowledge and approval, is insufficient to convict one of being a party. However, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. A person will not be presumed to act with criminal intention, but the trier of facts may find such intention upon

7

consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. If the totality of circumstantial evidence is sufficient to connect the defendant with the possession of the drugs, the conviction will be sustained, even though there is evidence to authorize a contrary finding.

*Martinez v. State*, 303 Ga. App. 71, 73-74 (1) (692 SE2d 737) (2010) (citation and punctuation omitted).

Here, Bustos did not have actual possession of any drugs at the time of his arrest. But he was present at a large-scale drug stash house, and officers testified that a drug organization would not allow individuals not involved in the organization to visit a stash house like this. Additionally, Bustos had in his pocket the keys to the Honda that had, shortly before his arrest, transported drugs for a sale. He was also headed towards the Honda as if to leave in it at the time the officers detained him. Further, Bustos initially told officers that he lived at the stash house, and the man who lived upstairs testified that Bustos spent a significant amount of time in the basement apartment. Given this evidence, the jury was authorized to conclude that Bustos was in constructive possession of the methamphetamine. The evidence, therefore, was sufficient to sustain his conviction. See *Martinez*, 303 Ga. App. at 73-74 (1)

(evidence sufficient to sustain trafficking conviction where defendant was present during a phone conversation about the logistics and sale of drugs, was present at the scene of the sale and conducted surveillance during the sale, and fled once he observed law enforcement); *Granados v. State*, 244 Ga. App. 153, 153-154 (1) (534 SE2d 886) (2000) (evidence sufficient to sustain trafficking conviction where defendant facilitated the undercover investigator's communication with cocaine trafficker and arrived with the trafficker and was present during the large-scale sale of cocaine).

*A22A0898. Portillo v. The State*

2. Portillo argues that the evidence was insufficient to support his convictions. We agree.

As we noted above, a person constructively possesses an item when he, "though not in actual possession, knowingly has both the power and intention" to exercise control over the item. See *Reyes*, 322 Ga. App. at 497 (1). It is well-established that "mere presence at the scene of a crime, even coupled with knowledge and approval, is insufficient" to support a finding of constructive possession of contraband. See *Martinez*, 303 Ga. App. at 73. Further, "whether the evidence shows something more than mere presence or proximity, and whether it excludes every other

9

reasonable hypothesis, are questions committed principally to the trier of fact" and we will not disturb the jury's decisions "unless they cannot be supported as a matter of law." *Lebis*, 302 Ga. at 754 (II).Additionally,

> [w]here the State's case rests on circumstantial evidence, the State must prove not only that the evidence is consistent with the hypothesis of guilt, but that every other reasonable hypothesis of nonguilt is excluded. . . . Circumstantial evidence is worth nothing in a criminal case, if the circumstances are reasonably consistent with the hypothesis of innocence, as well as the hypothesis of guilt.

*O'Neill v. State*, 285 Ga. 125, 125 (674 SE2d 302) (2009) (citations and punctuation omitted).

Here, the State's circumstantial evidence included that Portillo was present at a large-scale drug stash house, that he entered the residence in which methamphetamine and paraphernalia were visible in plain sight, that drug traffickers typically do not let individuals who are not associated with a trafficking scheme into a stash house of that size, and that he was acting in a manner consistent with counter surveillance.

As Portillo emphasizes in his brief, despite our deference to the jury's verdict, we have reversed convictions in cases where the circumstantial evidence failed to

establish the requisite link between the defendant and the contraband. For example, we find that Portillo's situation is comparable to the defendant in *Hill v. State*, 360 Ga. App. 143, 144-145 (860 SE2d 893) (2021), where officers found the defendant hiding, fully clothed, behind a shower curtain during a "deep clear" of the residence. The officers found no contraband on the defendant's person, but they located drugs and handguns underneath the kitchen sink, a digital scale on the kitchen stove, and packaging materials in the pantry. Id. at 144-145. The defendant's driver's license was on top of the kitchen sink. Id. at 145. The heroin found in the home was worth $26,000, and officers testified that a dealer would not leave this quantity of drugs unattended. Id. at 145. The State presented no evidence as to who owned or was renting the home. See id. The State also did not establish that the clothing found in the bedroom closet belonged to the defendant, or that the handguns were registered to or belonged to him. Id. We reversed his convictions, concluding that the State had not presented sufficient "evidence of a link between [the defendant] and the drugs and guns found in the home." Id. at 151.

Similarly, in *Morales v. State*, 332 Ga. App. 794, 796-797 (1) (775 SE2d 168) (2015), we concluded that there was insufficient evidence to support the defendant's convictions for trafficking and possession with intent to distribute where the

11

defendant did not own or live in the house where contraband was found, the defendant arrived at the house only minutes before the search, nothing found in the search linked the defendant to the house, no drugs or cash were found on the defendant's person, contraband was hidden in the house and not in plain sight, and there was no evidence that the defendant was involved in the controlled buy at the house. And in *Aquino v. State*, 308 Ga. App. 163, 164 (1) (706 SE2d 746) (2011), we reversed the defendant's trafficking conviction where he was found outside a residence where law enforcement found large amounts of methamphetamine and manufacturing equipment. The defendant was observed inside the residence earlier in the day, and he had a key to the front door on his person when he was arrested, but there was no evidence that he actually lived at the residence. Id. at 165-167 (1). Key to our reversal was that there was no evidence tying the defendant to the actual drugs or drug-making equipment, which were not found in plain sight. Id.

Like in the cases described above, although Portillo's presence at the residence tied him to the location where a trafficking operation was discovered, there was no other evidence tying Portillo to the basement apartment, to the car that was used to transport the drugs, or to the drugs themselves. To the contrary, Portillo arrived at the residence in a different vehicle after the Honda arrived, and the man who lived

12

upstairs testified that he had never seen Portillo at the basement apartment in the three months he had leased it to Luis. Although an officer testified that he observed all three codefendants enter the residence at various times, the witness did not provide any specific testimony about when or how many times Portillo went into the residence, and he testified that the men were only inside for 30 or 40 seconds at a time.

We acknowledge that officers testified that drug organizations typically would not allow individuals not associated with the trafficking operation to be at such locations, that the residence smelled like acetone used to process methamphetamine, and that methamphetamine was in plain view just inside the home. This evidence is sufficient to raise suspicion. And, a jury reasonably could conclude Portillo was aware of the criminal activity, and perhaps even that he approved of it. However, such circumstantial evidence of knowledge and approval is not enough to prove that Portillo was in constructive possession of the contraband found in the residence. *Martinez*, 303 Ga. App. at 73. We find this case comparable to other decisions where we found the evidence lacking despite circumstantial evidence of knowledge and/or approval. As explained above, in *Hill*, we found that the evidence against the defendant was not sufficient to sustain his conviction even though the defendant was

found inside residence with $26,000 worth of drugs and officers testified that a dealer would typically not leave that quantity of drugs in the presence of someone not associated with the drug operation. 360 Ga. App. at 145, 149-150. In *Denson v. State*, we reversed a trafficking conviction where the defendant was found inside a residence where "ingredients and paraphernalia commonly used to manufacture methamphetamine" were located throughout the residence, and which smelled strongly like a methamphetamine lab. 353 Ga. App. 450, 451, 453-454 (838 SE2d 117) (2020). In *Denson*, we found that, although this evidence was "sufficient to show that a reasonable person might be aware of some sort of illegal venture being conducted" at the residence, it "was not, in and of itself, sufficient to eliminate all reasonable doubt as to whether [the defendant] was a party to the crime of trafficking." Id. at 453.

However, our analysis does not end there. The State argues that Portillo's conviction may be sustained because he intentionally aided or abetted the crime by acting as a lookout. Indeed, a witness testified that Portillo was acting in a manner consistent with counter surveillance during the time he was outside the residence with

his codefendants. However, this testimony was limited — only one officer[2] testified that the three men outside the residence were "looking around awfully a lot" and looking at the officer's vehicle[3] such that the officer noted it in his report. This testimony is the only evidence the State presented to support its contention that Portillo was intentionally aiding or abetting the criminal activity. While the circumstances raise suspicion, we conclude that this officer's limited testimony (of conduct susceptible of multiple interpretations), without more, is not enough to sustain Portillo's conviction in this case.

One who intentionally aids or abets in the commission of a crime is a party to it. OCGA § 16-2-20 (b) (3). "[P]resence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." *Martinez*, 303 Ga. App. at 73 (1) (citation and punctuation omitted). In *Martinez*, we upheld a defendant's trafficking conviction, finding that he

---

[2] Another officer testified that it was relayed to him that the suspects were acting in a manner consistent with counter surveillance, but he did not observe this behavior himself.

[3] The Drug Enforcement Administration officer who made this testimony did not explain whether he was in a marked or unmarked vehicle. He testified that the defendants "seemed as if they were looking at my vehicle as they were unfamiliar with it."

15

"actively participated" as a party in a trafficking scheme even though he was not the individual who arranged the drug sale and the drugs were found in a vehicle not occupied by the defendant. Id. at 74 (1). However, the defendant in *Martinez* was present when his codefendant arranged the drug sale, he drove the individual who arranged the sale to the pre-arranged location, and he conducted counter surveillance once arriving at the pre-arranged location by circling the parking lot, then fleeing when he noticed police presence. Id. at 74-75 (1). In another case, *Cody v. State*, we found evidence sufficient to support the defendant's trafficking conviction as a party to the crime where the defendant was present and conducting "suspicious movement" of his vehicle at the scene of a pre-arranged drug sale. 222 Ga. App. 468, 470 (1) (474 SE2d 669) (1996). In *Cody*, however, a confidential informant's report implicated the defendant as one of two people interested in purchasing the drugs, and the defendant made inconsistent statements to police about how long he had been at the crime scene and whether he was aware of a large amount of cash found in the vehicle he was driving. Id. at 470 (1). Thus, the suspected counter surveillance was but one aspect of the defendants' participation in the trafficking schemes described above, whereas here, it is the only evidence that the State presented that could suggest Portillo was intentionally aiding or abetting the commission of a crime.

16

Finally, we acknowledge that the State presented evidence that Portillo was previously convicted of trafficking in heroin, but again, we do not believe that evidence of his prior conviction is sufficient to support a conviction in the instant case. See *Holland v. State*, 334 Ga. App. 600, 602-604 (780 SE2d 40) (2015) (reversing conviction for trafficking in cocaine where defendant was present in a residence where contraband was found but there was not evidence that he lived there or occupied the room where the contraband was found; defendant had prior convictions for the sale of cocaine) (physical precedent only).

Under these circumstances, where the State's case against Portillo was circumstantial and did not rule out a hypothesis that he was an innocent bystander, (that is, did not rule out that he was innocent of having constructive possession of the methamphetamine), we conclude that there was insufficient evidence to support a finding that Portillo was guilty in this case. See *Reyes*, 322 Ga. App. at 497 (1); *O'Neill*, 285 Ga. at 125. "There may have existed unexplained and suspicious circumstances, but they are not sufficient to convict." *Hill*, 360 Ga. App. at 143 (citation and punctuation omitted). Consequently, we reverse Portillo's convictions.

3. In light of our conclusion in Division 2, we do not reach Portillo's other claim that he received ineffective assistance from trial counsel.

17

*Judgment affirmed in Case No. A22A0652. Judgment reversed in Case No. A22A0898. McFadden, P. J., and Land, J. concur.*